THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ADILSON MONTEIRO, KAREN GINSBURG, JASON LUTAN, and BRIAN MINSK, Individually and as representatives of a class of similarly situated persons, on behalf of the CHILDREN'S HOSPITAL CORPORATION TAX-DEFERRED ANNUITY PLAN,<br><br>                    Plaintiffs,<br><br>v.<br><br>THE CHILDREN'S HOSPITAL CORPORATION, THE BOARD OF DIRECTORS OF THE CHILDREN'S HOSPITAL CORPORATION, THE CHILDREN'S HOSPITAL CORPORATION RETIREMENT COMMITTEE; and DOES No. 1-20, Whose Names Are Currently Unknown,<br><br>                    Defendants. | Case No: 1:22-cv-10069<br><br>**LEAVE TO FILE REPLY GRANTED ON APRIL 29, 2022 (Dkt. 31)** |

**REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION ..................................................................................................... 1
II. ARGUMENT ............................................................................................................. 2
    A. The Complaint Does Not Plausibly Allege That the Freedom Funds Were an Imprudent Investment. ................................................................................ 2
        1. The Passively-Managed Index Funds Are Not Meaningful Comparators to the Actively-Managed Freedom Funds. ........................... 2
        2. Plaintiffs' Opposition Confirms That Other "Popular" Target-Date Funds Are Not Meaningful Comparators. ................................................ 5
        3. Plaintiffs' Remaining Allegations Are Insufficient to Infer That the Freedom Funds Were Imprudent. ............................................................... 6
    B. Plaintiffs' Remaining Claims Regarding the Plan's Fees Are Implausible. ........... 8
    C. Plaintiffs' Recordkeeping Claim Fails. ................................................................. 8
    D. Plaintiffs Lack Article III Standing to Pursue Their Claims. ............................... 10
III. CONCLUSION ....................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Albert v. Oshkosh Corp.*,
  2021 WL 3932029 (E.D. Wis. Sept. 2, 2021), *appeal filed*, No. 21-2789 (7th
  Cir. Oct. 01, 2021) ...................................................................................................9

*Anderson v. Intel Corp.*,
  --- F. Supp. 3d ----, 2022 WL 74002 (N.D. Cal. Jan. 8, 2022) .................................4

*Barchock v. CVS Health Corp.*,
  886 F.3d 43 (1st Cir. 2018) ............................................................................1, 5, 7, 9

*Brown v. The MITRE Corp.*,
  No. 1:21-cv-11605-RGS, Dkt. 32 .............................................................................10

*Davis v. Wash. Univ. in St. Louis*,
  960 F.3d 478 (8th Cir. 2020) ............................................................................ *passim*

*Hecker v. Deere & Co.*,
  556 F.3d 575 (7th Cir. 2009) .....................................................................................8

*Jacobs v. Verizon Commc'ns, Inc.*,
  2017 WL 8809714 (S.D.N.Y. Sept. 28, 2017) ............................................................8

*Loomis v. Exelon*,
  658 F.3d 667 (7th Cir. 2011) ..................................................................................3, 7

*Matney v. Barrick Gold of N. Am., Inc.*,
  2022 WL 1186532 (D. Utah Apr. 21, 2022) ..........................................................5, 8

*Mator v. Wesco Distr., Inc.*,
  2021 WL 4523491 (W.D. Pa. Oct. 4, 2021) ..........................................................9, 10

*Meiners v. Wells Fargo & Co.*,
  898 F.3d 820 (8th Cir. 2018) ............................................................................ *passim*

*Moitoso v. FMR LLC*,
  451 F. Supp. 3d 189 (D. Mass. 2020) .....................................................................10

*Ramos v. Banner Health*,
  461 F. Supp. 3d 1067 (D. Colo. May 20, 2020), *aff'd*, 1 F.4th 769 (10th Cir.
  2021) ..........................................................................................................................6

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Smith v. Commonspirit Health*,
  2021 WL 4097052 (E.D. Ky. Sept. 8, 2021), *appeal filed*, No. 21-5964 (6th
  Cir. Oct. 14, 2021) ....................................................................................................5, 8

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016).......................................................................................................10

*Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan. v.
  Morgan Stanley Inv. Mgmt., Inc.*,
  712 F.3d 705 (2d Cir. 2013)........................................................................................5, 7

*Thole v. U.S. Bank N.A.*,
  140 S. Ct. 1615 (2020)...................................................................................................10

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
  325 F. App'x 31 (2d Cir. 2009) .......................................................................................9

**Statutes & Authorities**

29 U.S.C. § 1104(a)(1)(B) ......................................................................................................7

See 401(k) Resource Center, Investment Company Institute,
  https://www.ici.org/401k (last accessed May 12, 2022)............................................9

Federal Rule of Civil Procedure 12(b)(6) ................................................................. *passim*

I.  **INTRODUCTION**

Plaintiffs' Opposition rehashes the Complaint's flawed legal conclusions and unfounded inferences, and doubles down on the use of what courts consistently describe as "apples-and-oranges" comparisons. Plaintiffs contend the Freedom Funds' fees exceeded those of the Index Funds, and the Freedom Funds "underperformed" other "popular" target date funds. None of these allegations suggest imprudence. Indeed, courts refuse to infer imprudence simply because one target-date fund costs more than another, *see, e.g.*, *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823-24 (8th Cir. 2018) ("[T]he existence of a cheaper [target-date] fund does not mean that a particular fund is too expensive . . . or imprudent . . . ."), or "underperformed," *see, e.g.*, *Barchock v. CVS Health Corp.*, 886 F.3d 43, 48-55 (1st Cir. 2018) (affirming Rule 12(b)(6) dismissal of breach of duty of prudence claims that were premised on the alleged poor performance of a stable value fund based on a comparison to other stable value funds). Worse still, Plaintiffs' Opposition— just like their Complaint—only demonstrates why the Freedom Funds and Index Funds are inapt comparators, as the two different funds have, according to Plaintiffs, "crucial distinction[s]." Opp'n at 8. And Plaintiffs do not explain how the other "popular" target-date funds can possibly serve as a "meaningful benchmark" for the Freedom Funds given that the Complaint is devoid of any allegations regarding their investment strategies, asset allocations, or risk profiles. Plaintiffs' other allegations regarding the Freedom Funds do nothing to cure these fatal deficiencies or otherwise provide a basis to infer that Children's undertook an imprudent process in selecting and retaining the Freedom Funds. *Barchock*, 886 F.3d at 43.

Plaintiffs' recordkeeping allegations suffer the same fate. Alleging that seven other plans were cheaper does not even allow the inference that the Plan's fees were above average, let alone that they were unreasonable. *Id.* at 52-53 (affirming Rule 12 dismissal of fiduciary breach claim based on allegation that a plan investment's asset allocations were above average). Here, moreover, Plaintiffs further admit that it "may be the case" that Fidelity actually provided "additional services" to the Plan vis-à-vis the seven comparator plans. These admissions are fatal to their recordkeeping claim.

The Complaint should be dismissed with prejudice.

## II. ARGUMENT

### A. The Complaint Does Not Plausibly Allege That the Freedom Funds Were an Imprudent Investment.

#### 1. <u>The Passively-Managed Index Funds Are Not Meaningful Comparators to the Actively-Managed Freedom Funds</u>.

Plaintiffs' challenge to the actively-managed Freedom Funds is premised in part on the allegation that Plaintiffs' hand-selected alternative—the passively-managed Index Funds—cost less than the Freedom Funds. Defendants' Memorandum In Support of Their Motion to Dismiss (Dkt. 28) ("Mem.") at 6. Notably, the Complaint does not allege that the Freedom Funds underperformed the Index Funds at all, let alone net of fees—thus providing no explanation for how Plaintiffs could have been harmed by the allegedly more expensive Freedom Funds. *Id*. (summarizing performance data). Even so, as Plaintiffs recognize, the "test of prudence focuses on process and not results." Opp'n at 9 (citing *Barchock*, 886 F.3d at 44-45). Accordingly, simply because one fund costs more than another is not enough to infer imprudence as a matter of law. *Meiners*, 898 F.3d at 823-24 ("[T]he existence of a cheaper fund does not mean that a particular fund is too expensive . . . or imprudent . . . ."); Mem. at 8 (collecting cases). This is particularly true given that, as the Supreme Court recognized recently in *Hughes v. Northwestern University*, there is a "range of reasonable judgments a fiduciary may make based on her experience and expertise." 142 S. Ct. 737, 742 (2022). And here, there is no allegation that including the Freedom Funds was outside that range. Mem. at 6-7.

Further fatal to Plaintiffs' imprudence claim is their repeated admissions in both the Complaint and Opposition that the Freedom Funds and Index Funds are materially different investments, which explains the cost differential between the two. For example, the Opposition explains the following "crucial distinctions":

- "The [Freedom Funds] . . . is riskier and more expensive than its index fund counterpart, the Fidelity Freedom Index series . . . ."

- "[W]hile the investment managers select only Fidelity mutual funds that track market indices as components for the Index Suite, the same managers pick actively managed Fidelity mutual funds and riskier assets for the [Freedom Funds] . . . ."

- "In 2013 and 2014, the Active Suite underwent a strategy overhaul, authorizing the investment managers to deviate from the glide path allocations by 10%, thereby increasing its exposure to market volatility."

- "The crucial distinction between the two is the management team's discretion to select riskier and actively managed assets and to deviate from the glide path for the [Freedom Funds] . . . ."

Opp'n at 4, 8; *see also* Compl. ¶¶ 24, 61, 66, 67, 74.

As noted, the Opposition perfectly describes one of the key differences between the Freedom Funds and the Index Funds, i.e., the investment manager's discretion to deviate from the preset fund allocation, sometimes taking riskier positions, in an attempt to beat the benchmark or avoid losses. *See supra*. This is not an inconsequential difference of one or two securities underlying the fund. Instead, it is this "crucial" difference between actively-managed funds (like the Freedom Funds) and passively-managed funds (like the Index Funds) that cause courts to *reject* comparisons of funds employing those two distinct strategies. Mem. at 7-8 (collecting cases). In short, the Freedom Funds and Index Funds have materially "different aims, different risks, and different potential rewards that cater to different investors." *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 485 (8th Cir. 2020). That the funds had different fees is to be expected and does not suggest imprudence: active strategies generally cost more than passive ones because active management requires more work by the fund manager. *See Loomis v. Exelon*, 658 F.3d 667, 669-70 (7th Cir. 2011).

Plaintiffs' argument that the funds can be compared because they share an "investment management firm," "management team," and purported commonalities in glide path falls flat. Mem. at 7. Their own cited caselaw rejects that argument. In *Davis v. Salesforce.com*, the plaintiffs alleged that the defendants breached their fiduciary duty by offering actively-managed JP Morgan Smart Retirement target-date funds instead of partially passive (and lower-cost) JP Morgan Smart Retirement Blend target-date funds. The Ninth Circuit rejected that argument and affirmed dismissal of that claim. 2022 WL 1055557, at *2 n.1 (9th Cir. 2022) ("We agree with the district court that plaintiffs have not plausibly alleged that defendants breached the duty of prudence by failing to adequately consider passively managed mutual fund alternatives to the actively managed funds offered by the plan."). Of course, investment professionals can manage a variety of

investments—what matters here is that the Freedom Funds and Index Funds, by Plaintiffs' own repeated admissions and like the target-date funds at issue in *Salesforce*, have different investment strategies, holdings, and risk. *Id*.; *supra*. That does not mean that one fund "is necessarily better or worse"; rather, they are "just different, even if [they have] 'some similarit[ies],'" and Plaintiffs cannot "dodge the requirement for a meaningful benchmark by merely finding a less expensive alternative fund or two with some [superficial] similarity." *Davis*, 960 F.3d at 485-86 (citation omitted); *accord Anderson v. Intel Corp.*, --- F. Supp. 3d ----, 2022 WL 74002, at *8 (N.D. Cal. Jan. 8, 2022) ("[L]abeling funds as 'comparable' or as a 'peer' is insufficient to establish that comparator funds are meaningful benchmarks."). Plaintiffs' comparisons to the Index Funds are anything but "ideal," Opp'n at 8, and cannot infer imprudence.

      Plaintiffs' attempts to distinguish authority contrary to their position are unpersuasive. The Opposition argues that *Meiners*—where the Eighth Circuit rejected a comparison to active and passive target-date funds like those here—is distinguishable because there, plaintiffs "[did] not match that benchmark by alleging that cheaper alternatives investments with some similarities exist in the marketplace." Opp'n at 8. But so too here. The Eighth Circuit in *Meiners* squarely held that comparing funds with only "some similarity" is not enough to state an imprudence claim. *Id*. (holding that plaintiffs cannot "dodge the requirement for a meaningful benchmark by merely finding a less expensive alternative fund or two with some similarity"). And Plaintiffs here do not claim that the Freedom Funds and the Index Funds are the "same fund" with only different costs—the benchmark that the Eighth Circuit endorsed in *Meiners*. As Plaintiffs admit, the funds have *different* strategies and purposes: the Freedom Funds are designed "to 'time' market shifts and locate underpriced securities," whereas the Index Funds merely "track market indices." Opp'n at 4, 13; *supra*. Plaintiffs' attempt to distinguish *Davis* fails for the same reason. 960 F.3d at 484-85 (rejecting comparison of an actively-managed fund "that professional investment managers try to beat" with an index fund "that tries to mimic a market index").

4

### 2. Plaintiffs' Opposition Confirms That Other "Popular" Target-Date Funds Are Not Meaningful Comparators.

Plaintiffs next compare the Freedom Funds to four other "popular" target date funds. Mem. at 8. Unlike the Index Funds, Plaintiffs do not complain that these other "popular" funds were more costly than the Freedom Funds but rather say the Freedom Funds "underperformed" them. *Id*. at 9. This claim fails out of the gate because ERISA fiduciaries are not required to select the best-performing fund, and Plaintiffs do not argue otherwise. *Barchock*, 886 F.3d at 44-45; *Meiners*, 898 F. 3d at 823-24; *see also* Mem. at 10 (collecting cases). Moreover, Plaintiffs' Complaint says nothing about whether the Freedom Funds and any of Plaintiffs' four "comparable" target-date funds share similar investment strategies (passive, active, blend), asset allocations (bonds vs. equities), risk profiles (aggressive or conservative), or glidepaths—i.e., Plaintiffs fail to allege any "meaningful benchmarks." *Id*. They have no rejoinder. Plaintiffs resort to arguing that the Court cannot decide the "appropriateness" of their benchmarks on a motion to dismiss. Opp'n at 9-10. Not so. That is exactly what the First Circuit did in *Barchock*, what the Eighth Circuit did in *Meiners* and *Davis*, and what the Ninth Circuit just did in *Salesforce*.

Other courts, too, routinely reject materially similar allegations at the Rule 12 stage based on the same type of inadequate comparators Plaintiffs allege here. *See* Mem. at 7-9 (collecting cases); *see also Matney v. Barrick Gold of N. Am., Inc*., 2022 WL 1186532, at *10 (D. Utah Apr. 21, 2022) (granting Rule 12 dismissal in part because "the actively-managed American Funds Target Date Retirement funds that Plaintiffs select for comparison have materially different investment strategies than the JPMorgan target date funds"). Were it otherwise, *any* fiduciary could be sued (and open the door to costly discovery) over any plan investment, because with thousands of (non-comparable) alternatives available in the market and the benefit of 20/20 hindsight, a plaintiff can *always* find a fund that was cheaper or performed better. That is simply not the law. *Meiners*, 898 F.3d at 822-23; *Davis*, 860 F.3d at 484-85; *Smith v. Commonspirit Health*, 2021 WL 4097052, at *7 (E.D. Ky. Sept. 8, 2021), *appeal filed*, No. 21-5964 (6th Cir. Oct. 14, 2021) (without requiring a meaningful benchmark, district courts would "abrogate their duty to weed out claims that lack merit as a matter of law"); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent*

5

*Cath. Med. Ctrs. Ret. Plan. v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705, 718-19 (2d Cir. 2013) ("*St. Vincent*").

Worse still, Plaintiffs' cherry-picked performance data as of a single date prior to the class period says nothing about the Freedom Funds' performance at any other point in time, including *the entire putative class period*. Mem. at 10.[1] Plaintiffs' Opposition provides no explanation for this fatal deficiency.

### 3. Plaintiffs' Remaining Allegations Are Insufficient to Infer That the Freedom Funds Were Imprudent.

Plaintiffs also argue that the Court must view the Complaint "as a whole" and that other allegations regarding the Freedom Funds lend credence to their claims. In other words, Plaintiffs ask the Court to find that the quantity of allegations determines plausibility, without evaluating whether those allegations support a reasonable inference of imprudence. But verbosity is not the test, and Plaintiffs cannot move into discovery simply by stuffing a complaint with conclusory statements and comparisons that do not offer any meaningful benchmark. *See Meiners*, 898 F.3d at 824 (rejecting argument that district court did not "consider the Complaint as a whole").

To begin, Plaintiffs' citation to the Reuters and Morningstar articles is insufficient to demonstrate imprudence. Opp'n at 4. It is implausible to conclude that a few purportedly "negative" articles establish a fund's imprudence, and Plaintiffs unsurprisingly offer no legal support for that argument. And while Plaintiffs place much weight on their allegation that between 2014 and 2018 the Freedom Funds experienced $16 billion in outflows, they provide no context regarding the amount of "outflows" in relation to the total assets in that suite of funds. *Id*. Even after these "outflows," the Freedom Funds had more than $167 billion in assets, while the Index Funds had only $27 billion, according to the 2019 Morningstar Target-Date Fund Landscape Report cited by Plaintiffs. Even as of 2018, the Freedom Funds were the second most popular target-date funds in the industry, with 15.4% market share–compared to 2.5% market share for the Index Funds. Mem. at 6 (the Morningstar Report reflects other investors preferred the Freedom

---

[1] Plaintiffs' reliance on *Ramos v. Banner Health*, 461 F. Supp. 3d 1067 (D. Colo. May 20, 2020), *aff'd*, 1 F.4th 769 (10th Cir. 2021), is of no help. Opp'n at 11. There, the Court found that the Freedom Funds were objectively prudent investment options. 461 F. Supp. 3d at 1095, 1129-30.

Funds to the Index Funds by a margin of *six to one*). This means other prudent fiduciaries determined that the Freedom Funds were appropriate investments. Plaintiffs try brush this fact to the side, arguing the Freedom Funds' "considerable assets" are not "the measure of prudence." Opp'n at 12. But the fact that the Freedom Funds were widely used by similarly situated fiduciaries precisely aligns with ERISA's express requirement that fiduciaries act in a like capacity as other similarly situated fiduciaries. 29 U.S.C. § 1104(a)(1)(B). Plaintiffs cannot allege that the Plan's investment in the Freedom Funds falls outside the "range of reasonable judgments" that fiduciaries make when so many other fiduciaries made the same exact judgment. *Hughes*, 142 S. Ct. at 742.

Plaintiffs' generic allegations of excessive "risk" are equally unavailing. *First*, Plaintiffs do not allege that the Freedom Funds took on risks that were inconsistent from what was disclosed to Plan participants. *See Barchock*, 886 F.3d at 51 (affirming Rule 12 dismissal of fiduciary breach claim and distinguishing other cases because "in each of those cases, the finding that an ERISA fiduciary had violated the duty of prudence rested on evidence that, in managing investments for ERISA plan participants, *the fiduciary took on more risk than the fiduciary had disclosed to the participants*") (emphasis added); *St. Vincent*, 712 F.3d at 718 (affirming Rule 12 dismissal of similar claim based on excessively risky investments). *Second*, that the Freedom Funds are "risker" than the Index Funds does not bear on the prudence of the Freedom Funds: *all* actively-managed funds are "riskier" than index funds and there is nothing *per se* imprudent about offering actively-managed funds. Opp'n at 4 (*citing* Compl. ¶ 66). As explained, the very purpose of an actively-managed fund is to "try to find and buy underpriced securities while selling ones that the advisers think are overvalued," which inherently involves more risk than "simply track[ing] a designated portfolio. *See Loomis*, 658 F.3d at 669-70; *see also Davis*, 960 F.3d at 485 (actively and passively-managed funds have "different risks"). *Third*, the "strategy overhaul" in the Freedom Funds about which Plaintiffs complain is alleged to have been well known at the time. Opp'n at 13; Compl. ¶ 74. Other prudent investors thus preferred the Freedom Funds *with the new strategy and risks* by a six-to-one margin over the Index Funds. *See supra*. In other words, other prudent investors preferred the strategy and risks associated with the Freedom Funds over the strategy and risks of the Index Funds, and over the strategy and risks associated with the vast majority of other target-

7

date funds. *Supra*; *Smith*, 2021 WL 4097052, at *8 ("[It] is apparent that the [Freedom Funds] remained significantly more popular than the Index [Funds] as late as 2018 and was the second-most popular target-date fund in the entire industry by market share."). There is no inference of imprudence when Children's offered funds preferred by so many other investors. *Supra*.[2]

### B. Plaintiffs' Remaining Claims Regarding the Plan's Fees Are Implausible.

The Opposition also further confirms the deficiency of Plaintiffs' allegations regarding the Plan's investment fees. *See* Mem at. 16-18. All of Plaintiffs' claims in this regard—whether disguised as claims seeking more institutional share classes than the Plan already offered, or allegations that the "total plan cost" was too high—boil down to the same insufficient allegation: the Plan did not choose the least-expensive options available. But ERISA does not require fiduciaries to "scour the market to find and offer the cheapest possible fund[s]," *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009), and does not permit plaintiffs to paternalistically nitpick a plan's selections, *Meiners*, 898 F.3d at 823-24 ("[T]he existence of a cheaper fund does not mean that a particular fund is too expensive in the market generally or that it is otherwise an imprudent choice."); *see also Matney*, 2022 WL 1186532, at *7 (granting Rule 12 dismissal and holding that "courts have often held that '[a]lleging only the inclusion of more expensive share classes is not enough"). ERISA also has no requirement that plans include specific investments, let alone the precise investments demanded by Plaintiffs. *See Hecker*, 556 F.3d at 586. Plaintiffs' remaining excessive-investment-fee allegations do not state a claim.

### C. Plaintiffs' Recordkeeping Claim Fails.

Plaintiffs' challenge to the Plan's recordkeeping fees fares no better because the Complaint fails to demonstrate that the alleged recordkeeping fees were outside the "range of reasonable judgments a fiduciary may make." *Hughes*, 142 S. Ct. at 742. "The mere existence of purportedly lower fees paid by other plans says nothing about the reasonableness of [a] [p]lan's fee, and it does

---

[2] Plaintiffs are also wrong that Children's cited caselaw involved fiduciary breach claims based "solely" on the investment's "risk level." *See, e.g.*, *Jacobs v. Verizon Commc'ns, Inc.*, 2017 WL 8809714, at *2 (S.D.N.Y. Sept. 28, 2017) (alleging that "[a]ll of the [Verizon] TDFs have substantially underperformed popular, low-fee, passively-managed TDFs offered by Vanguard" and that defendant failed to "effectively monitor the managers it [ ] selected to invest the assets of its custom funds, as evidenced by the persistently poor performance of the Global Opportunity Fund").

not make it plausible that another recordkeeper would have offered to provide the [p]lan with services at a lower cost." *Albert v. Oshkosh Corp.*, 2021 WL 3932029, at *5 (E.D. Wis. Sept. 2, 2021), *appeal filed*, No. 21-2789 (7th Cir. Oct. 01, 2021). Put differently, just because someone else stays at a cheaper hotel, hired a cheaper lawyer, or negotiated a cheaper price for a car does not mean that the price you paid for the hotel, lawyer, or car were unreasonable. This takeaway holds here. And Plaintiffs offer no factual allegations that the Plan's fees were unreasonable, that is, that they were outside the range of fees that all other plans paid. *Barchock*, 886 F.3d at 52-53 (affirming Rule 12 dismissal of fiduciary breach claim despite allegation that a plan investment's asset allocations were above average because those allegations did not account for the "range" of allocations of the other plan investments).

Plaintiffs cannot create an inference of imprudence by pointing to seven cherry-picked retirement plans[3] that supposedly paid less in recordkeeping fees—particularly when they have different participant levels, which, according to Plaintiffs is the "primary driver" of those fees. Mem. at 16-19 (collecting cases). The Opposition has no retort. Plaintiffs, moreover, admit they do not "cite" or otherwise rely upon any data from their alleged comparator plans from any year other than 2020. Opp'n at 14. While Plaintiffs nonetheless say they are alleging fiduciary misconduct "throughout the entirety Class Period," they allege *no supporting facts*. *See generally* Compl.; *see also Barchock*, 886 F.3d at 53 (affirming dismissal even though the plan's investments fell "outside the range of allocations made by the surveyed funds in 2011 but then was necessarily within the range of allocations made by the surveyed funds in 2012").[4]

The deficiencies in Plaintiffs' pleading do not end there. Plaintiffs further acknowledge (as they must) that it "may be the case" that Fidelity provided *additional services* to the Plan, further reinforcing the "apples-to-oranges" comparison between the Plan and the alleged comparator plans. Mem. at 15 (explaining that Plaintiffs tally their comparators' administrative fees, rather

---

[3] As of September 30, 2021, there were approximately *600,000* unique 401(k) plans in the United States. *See* 401(k) Resource Center, Investment Company Institute, https://www.ici.org/401k (last accessed May 12, 2022).

[4] *See also Mator v. Wesco Distr., Inc.*, 2021 WL 4523491, at *7 (W.D. Pa. Oct. 4, 2021); *Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009) (affirming dismissal where "[p]laintiffs fail[ed] to allege that the fees were excessive *relative to the services rendered*") (emphasis added) (internal quotations and citations omitted*)*.

than recordkeeping fees); *see also Mator*, 2021 WL 4523491, at *7; *Davis*, 960 F.3d at 485; Opp'n at 15. In sum, Plaintiffs' claim represents nothing more than a "price tag to price tag comparison" that does not plausibly suggest a fiduciary breach. *Mator*, 2021 WL 4523491, at *7.[5]

### D. Plaintiffs Lack Article III Standing to Pursue Their Claims.

Plaintiffs allege only that they invested in four vintages of the Freedom Funds but purport to challenge all of the Freedom Fund vintages, as well as the share classes of seven other funds in which none of them invested. Mem. at 19-20. As such, Plaintiffs suffered no personal injury-in-fact from any alleged excessive fees or poor performance relating to these funds. Instead, Plaintiffs say this does not matter because they are suing "on behalf of the Plan as a whole." Opp'n at 18. They, however, conflate constitutional standing with statutory standing, ignoring that the prerequisite to bringing claims on behalf of others is establishing a personal injury to pursuant to Article III. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 n.6 (2016). "[T]he mere fact that ERISA plan participants purport to sue in a derivative capacity 'on behalf of the plan,' as Plaintiffs allege here, does not absolve their obligation to satisfy Article III's individualized-injury requirement." *Mator*, 2021 WL 4523491, at *3 (quotations and citation omitted). The Supreme Court in *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020), rejected Plaintiffs' precise argument. *Id.* at 1620-21 (named plaintiffs themselves "still must have suffered an injury in fact" even when suing on behalf of a plan) (quotation and citation omitted).[6]

## III. CONCLUSION

For these reasons, and those stated in Children's opening memorandum, the Complaint should be dismissed with prejudice.

---

[5] Plaintiffs' reference to a stipulation that Fidelity entered into in another case as part of an effort to resolve a discovery dispute also cannot support their allegations here. Opp'n at 14-15. That stipulation says nothing about the services provided in exchange for those fees, or how those services compare with the Plan here. *See Moitoso v. FMR LLC*, 451 F. Supp. 3d 189, 214 (D. Mass. 2020). In fact, the stipulation says that the Fidelity plan did not receive *more* services than other plans, but conspicuously says nothing about whether the Fidelity plan received *fewer* services than other plans, and of course says nothing about this Plan.

[6] Plaintiffs are incorrect that *Thole's* reasoning applies only to defined benefit plans and not to defined-contribution plans, like the Plan here. Opp'n at 20, n.13. District courts have applied *Thole* to cases involving other types of ERISA plans—not just defined benefit plans. Mem. at 19-20 (collecting cases); *see also Brown v. The MITRE Corp.*, No. 1:21-cv-11605-RGS, Dkt. 32 (applying *Thole* to defined-contribution plan and dismissing case on standing grounds).

| | |
|---|---|
| Dated:  May 12, 2022 | Respectfully submitted,<br><br>MORGAN, LEWIS & BOCKIUS LLP<br><br><br>By: /s/ *Keri L. Engelman*<br>Keri L. Engelman (BBO #704360)<br>Joshua M. Adler (BBO# 706905)<br>One Federal Street<br>Boston, MA  02110-1726<br>Tel:  (617) 341-7828<br>Fax:  (617) 341-7701<br>keri.engelman@morganlewis.com<br>joshua.adler@morganlewis.com<br><br>Jeremy P. Blumenfeld (admitted *pro hac vice*)<br>1701 Market Street<br>Philadelphia, PA  19103<br>Tel:  (215) 963-5000<br>Fax:  (215) 963-5001<br>jeremy.blumenfeld@morganlewis.com<br><br>Stephanie R. Reiss (admitted *pro hac vice*)<br>One Oxford Centre, 32nd Fl.<br>Pittsburgh, PA  15219<br>Tel:  (412) 560-3378<br>Fax:  (412) 560-3700<br>stephanie.reiss@morganlewis.com |

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of May, 2022, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

                                                    */s/ Keri L. Engelman*
                                                    Keri L. Engelman