# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ADILSON MONTEIRO, KAREN GINSBURG, JASON LUTAN, and BRIAN MINSK, Individually and as representatives of a class of similarly situated persons, on behalf of the CHILDREN'S HOSPITAL CORPORATION TAX-DEFERRED ANNUITY PLAN,<br><br>Plaintiffs,<br><br>v.<br><br>THE CHILDREN'S HOSPITAL CORPORATION, THE BOARD OF DIRECTORS OF THE CHILDREN'S HOSPITAL CORPORATION, THE CHILDREN'S HOSPITAL CORPORATION RETIREMENT COMMITTEE; and DOES No. 1-20, Whose Names Are Currently Unknown,<br><br>Defendants. | Case No: 1:22-cv-10069 |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO CERTIFY INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................. 4

    I.      Factual Background ............................................................................... 4

    II.     Procedural History ................................................................................ 5

LEGAL STANDARD ...................................................................................................... 6

ARGUMENT .................................................................................................................. 6

    I.      The Order Involves A Controlling Question Of Law. ........................... 6

          A.     The Order Presents A Question Of Law. ................................. 7

          B.     The Question Of Law Presented By The Order Is Controlling. ............... 9

          C.     Review Is Also Warranted Because The Order Presents An Important Issue That Has Evaded First Circuit Review. ........................ 10

    II.     There Are Substantial Grounds For A Difference Of Opinion On This Legal Question. .......................................................................... 12

    III.    An Immediate Appeal Would Materially Advance The Ultimate Termination Of The Litigation............................................................. 18

CONCLUSION................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Albert v. Oshkosh Corp.*,
  47 F.4th 570 (7th Cir. 2022) ................................................................................8, 14

*Barchock v. CVS Health Corp.*,
  886 F.3d 43 (1st Cir. 2018) ..................................................................................8, 13

*Beldock v. Microsoft Corp.*,
  No. C22-1082JLR, 2023 WL 1798171 (W.D. Wash. Feb. 7, 2023) ........................17

*Boniface v. Viliena*,
  417 F. Supp. 3d 113 (D. Mass. 2019) .....................................................................12

*Brown v. Daikin Am., Inc.*,
  No. 18-cv-11091, 2021 WL 1758898 (S.D.N.Y. May 4, 2021) ...............................18

*Brown v. MITRE Corp.*,
  No. 22-CV-10976-DJC, 2023 WL 2383772 (D. Mass. Mar. 6, 2023) .....................10

*Davis v. Salesforce.com, Inc.*,
  No. 21-15867, 2022 WL 1055557 (9th Cir. Apr. 8, 2022) ...................14, 15, 16, 18

*Enos v. Adidas Am., Inc.*,
  No. 3:19-CV-01073-YY, 2021 WL 5622121 (D. Or. Aug. 26, 2021) .....................15

*Ferguson v. Ruane Cunniff & Goldfarb Inc.*,
  No. 17-CV-6685 (ALC), 2019 WL 4466714 (S.D.N.Y. Sept. 18, 2019) ................18

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014) ................................................................................................19

*Forman v. TriHealth, Inc.*,
  40 F.4th 443 (6th Cir. 2022) ..............................................................................14, 16

*Hall v. Capital One Fin. Corp.*,
  No. 1:22-cv-00857-MSN-JFA, 2023 WL 2333304 (E.D. Va. Mar. 1, 2023)...........15

*Hughes v. Nw. Univ.*,
  142 S. Ct. 737 (2022) ....................................................................................*passim*

*Hughes v. Nw. Univ.*,
  No. 18-2569, 2023 WL 2607921 (7th Cir. Mar. 23, 2023)......................................14

*In re Biogen, Inc. ERISA Litig.*,
  No. 20-CV-11325-DJC, 2021 WL 3116331 (D. Mass. July 22, 2021) ................................. 16

*In re LinkedIn ERISA Litig.*,
  No. 5:20-cv-05704, 2021 WL 5331448 (N.D. Cal. Nov. 16, 2021) ....................................... 20

*In re Text Messaging Antitrust Litig.*,
  630 F.3d 622 (7th Cir. 2010) ................................................................................................. 9

*Johansen v. Liberty Mut. Grp.*,
  No. 1:15-CV-12920-ADB, 2017 WL 937712 (D. Mass. Mar. 9, 2017) .................................. 9

*Kong v. Trader Joe's Co.*,
  No. 20-56415, 2022 WL 1125667 (9th Cir. Apr. 15, 2022) ................................................. 14

*Krutchen v. Ricoh USA, Inc.*,
  No. 22-cv-678, 2022 WL 16950264 (E.D. Pa. Nov. 15, 2022) ............................................ 14

*Locascio v. Fluor Corp.*,
  No. 3:22-CV-0154-X, 2023 WL 320000 (N.D. Tex. Jan. 18, 2023) ......................... 15, 16, 17

*Loomis v. Exelon*,
  658 F.3d 667 (7th Cir. 2011) ............................................................................................. 4, 5

*Mator v. Wesco Distrib., Inc.*,
  No. 21-403, 2022 WL 3566108 (W.D. Pa. Aug. 18, 2022) .............................................. 14, 18

*Matousek v. MidAmerican Energy Co.*,
  51 F.4th 274 (8th Cir. 2022) ......................................................................................... 7, 8, 14

*Meijer, Inc. v. Ranbaxy Inc.*,
  245 F. Supp. 3d 312 (D. Mass. 2017) ....................................................................... 7, 9, 12, 19

*Meiners v. Wells Fargo & Co.*,
  898 F.3d 820 (8th Cir. 2018) ................................................................................... 2, 15, 16

*Meiners v. Wells Fargo & Co.*,
  No. CV 16-3981, 2017 WL 2303968 (D. Minn. May 25, 2017) ............................................. 4

*Miara v. First Allmerica Fin. Life Ins. Co.*,
  379 F. Supp. 2d 20 (D. Mass. 2005) ...................................................................................... 13

*Natale v. Pfizer, Inc.*,
  379 F. Supp. 2d 161 (D. Mass. 2005) .................................................................................... 18

*Norton v. Mass Gen. Brigham Inc.*,
  No. 1:22-cv-10045-AK (D. Mass.) ................................................................................. 10, 11, 12

*Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013) ...................................................................................12, 16, 19

*Philip Morris Inc. v. Harshbarger*,
   957 F. Supp. 327 (D. Mass. 1997) ..............................................................................6, 10, 12

*Ruilova v. Yale-New Haven Hosp., Inc.*,
   No. 3:22-cv-00111-MPS, 2023 WL 2301962 (D. Conn. Mar. 1, 2023).....................15, 16, 17

*SEC v. Rocklage*,
   No. 05-CV-10074-MEL, 2005 WL 8175998 (D. Mass. Dec. 14, 2005) ...........................9, 20

*SEC v. Sargent*,
   605 F. Supp. 3d 316 (D. Mass. 2022) ....................................................................................13

*Sellers v. Trustees of Coll.*,
   No. CV 22-10912-WGY, 2022 WL 17968685 (D. Mass. Dec. 27, 2022) ..............................17

*Simmons v. Galvin*,
   No. CV 01-11040-MLW, 2008 WL 11456109 (D. Mass. Jan. 16, 2008) ...............................20

*Smith v. CommonSpirit Health*,
   37 F.4th 1160 (6th Cir. 2022) .......................................................................................*passim*

*Sweda v. Univ. of Pennsylvania*,
   923 F.3d 320 (3d Cir. 2019) ...................................................................................................14

*Thole v. U.S. Bank N.A.*,
   140 S. Ct. 1615 (2020) ............................................................................................................20

*Tracey v. MIT*,
   No. CV 16-11620-NMG, 2017 WL 4478239 (D. Mass. Oct. 4, 2017) ...................................16

*Tullgren v. Booz Allen Hamilton*,
   No. 1:22-cv-00856-MSN-IDD, 2023 WL 2307615 (E.D. Va. Mar. 1, 2023) ........................15

*Velazquez v. Massachusetts Fin. Servs. Co.*,
   320 F. Supp. 3d 252 (D. Mass. 2018) ....................................................................................16

*Waters v. Day & Zimmermann NPS, Inc.*,
   No. CV 19-11585-NMG, 2020 WL 4754984 (D. Mass. Aug. 14, 2020) .................6, 7, 10, 19

*White v. Chevron Corp.*,
   No. 16-CV-0793-PJH, 2017 WL 2352137 (N.D. Cal. May 31, 2017) ..............................16, 18

*White v. Chevron Corp.*,
   752 F. App'x 453 (9th Cir. 2018) ...........................................................................................14

**STATUTES**

26 U.S.C. § 403(b)(1) ...........................................................................................................4

26 U.S.C. § 403(b)(7) ...........................................................................................................4

28 U.S.C. § 1292(b) ....................................................................................................... *passim*

29 U.S.C. § 1104(a)(1) .........................................................................................................5

29 U.S.C. § 1104(a)(1)(B) ....................................................................................................7

**OTHER AUTHORITIES**

16 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure:
    Jurisdiction* § 3930 (3d ed.) ....................................................................10, 12, 19

19 James William Moore, *Moore's Federal Practice - Civil* § 203.31 (2023) ........................9, 13

Defendants the Children's Hospital Corporation, the Board of Directors of the Children's Hospital Corporation, and the Children's Hospital Corporation Retirement Committee (collectively, "Defendants") respectfully request that the Court, pursuant to 28 U.S.C. § 1292(b), certify for interlocutory appeal the Court's order on Defendants' motion to dismiss (ECF No. 56) (the "Order").[1]

## **INTRODUCTION**

The Court should certify the Order for interlocutory review to enable the First Circuit to clarify the requirements for pleading a legally sufficient breach-of-fiduciary-duty claim under the Employee Retirement Income Security Act of 1974 ("ERISA"). In denying Defendants' motion to dismiss, the Order concluded that Plaintiffs had sufficiently pleaded ERISA fiduciary-duty claims based on alleged: (1) excessive fees for recordkeeping services; (2) excessive costs and "underperformance" of actively-managed target-date funds ("TDFs"), the Fidelity Freedom Funds ("Freedom Funds"); and (3) excessive costs of retail share classes of certain mutual funds.

Interlocutory review is warranted when an "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). All three of these requirements are met here.

*First*, the Order "involves a controlling question of law." 28 U.S.C. § 1292(b). The Order turned on the proper pleading standard applying to ERISA fiduciary-duty claims, which, in turn, depends on the statute and relevant judicial decisions on pleading standards. *See Hughes v. Nw. Univ.*, 142 S. Ct. 737, 740–42 (2022) (reviewing pleading standard "on review of respondents'

---

[1] "Children's" refers collectively to Defendants the Children's Hospital Corporation, its Board of Directors, and the Children's Hospital Corporation Retirement Committee.

motion to dismiss the operative amended complaint" and directing court, on remand, to "apply[] the pleading standard discussed in" *Iqbal* and *Twombly*).

*Second*, there is "substantial ground for difference of opinion" on the pleading-standard question. *Id*. This legal question has divided courts across jurisdictions. As to the claim for excessive recordkeeping fees, some courts of appeals and district courts have held that recordkeeping-fee claims must be dismissed when plaintiffs fail to sufficiently allege facts showing that comparable plans paid less for comparable recordkeeping services. Some other courts—including district courts within the First Circuit—have taken a more lenient view of the pleading standard in this context. For example, they allow plaintiffs to identify just a handful of the thousands of potentially comparable retirement plans, assert that those plans incur lower fees than a defendant's plan, and open the doors to discovery without establishing that these supposed comparator plans and their recordkeeping services are similar in kind or that the challenged plan's fees were an outlier, or even above average.

Courts have also split on the legal question of what a plaintiff must plead when alleging a breach of fiduciary duty based on alleged excessive costs and underperformance of a TDF, like the Freedom Funds here. Many courts have held that a plaintiff cannot simply point to a supposed "after-the-fact performance gap between benchmark comparators" and claim that this "by itself violates the process-driven duties imposed on ERISA fund managers." *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1167 (6th Cir. 2022) (affirming dismissal of fiduciary-duty claims based on alleged underperformance of the same Freedom Funds at issue here). Similarly, many courts have held that imprudence claims must be dismissed when they simply compare the costs (or performance) of actively-managed funds such as the Freedom Funds to passively-managed funds. *See, e.g.*, *id.*; *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 825 (8th Cir. 2018) (affirming dismissal

of fiduciary-duty claims making this inapt comparison, holding that the plaintiffs failed to offer "any meaningful benchmark" between the different investment options).

Courts have also split when considering whether allegations that different costs associated with different share classes state a claim for breach of fiduciary duty. Many courts have held that a plaintiff fails to state a fiduciary-breach claim by merely alleging that a plan offered retail rather than institutional share classes, although some courts have reached the opposite conclusion.

*Third*, an interlocutory appeal could materially advance the ultimate termination of the litigation. A decision from the First Circuit could dispose of each of Plaintiffs' claims and terminate the litigation, or at a minimum streamline the claims significantly for further litigation. In addition, an interlocutory appeal could avoid the need to engage in time-consuming and costly discovery altogether, which could be particularly burdensome in this ERISA putative class action. At minimum, an interlocutory appeal could narrow discovery.

Moreover, absent interlocutory review, it is uncertain when the First Circuit will have the opportunity to decide the appropriate pleading standard in an ERISA breach-of-fiduciary-duty case like this one. Unlike, for example, the Sixth, Seventh, Eighth, and Ninth Circuits, there are no district court decisions in this Circuit granting a motion to dismiss in an ERISA case challenging allegedly excessive recordkeeping fees, the cost and/or performance of TDFs, or the cost of retail share classes. A complete dismissal would be appealable as of right, but with no such rulings in this Circuit, interlocutory review is the only avenue for this important legal question to be addressed by the First Circuit.

For all these reasons, Defendants respectfully request that the Court certify its Order for interlocutory review under 28 U.S.C. § 1292(b).

## BACKGROUND

### I.    Factual Background

Children's Hospital helps its employees prepare for retirement through, among other things, a "participant-directed 403(b) plan." Compl. ¶ 21.[2] Throughout the putative class period, participants could choose from a diverse menu of investment options covering different asset classes, investment styles, and risk-reward profiles—including the actively-managed suite of Freedom Fund TDFs. *Id*. ¶ 61; *see Smith*, 37 F.4th at 1164 (explaining that the Freedom Funds "are a suite of 'target date fund[s],' which means that the managers change the allocation of the underlying investments that they hold over time, say by selling funds that hold stocks to buy a greater proportion of funds that hold bonds or cash" (citation omitted)); *see also Meiners v. Wells Fargo & Co*., No. CV 16-3981, 2017 WL 2303968, at *1 n.2 (D. Minn. May 25, 2017) ("A target date fund is an investment in which the allocation of equity, bonds, and cash" automatically shifts "as the target date approaches"), *aff'd*, 898 F.3d 820 (8th Cir. 2018); *Loomis v. Exelon*, 658 F.3d 667, 669–70 (7th Cir. 2011) (explaining that actively-managed funds "try to find and buy underpriced securities while selling ones that the advisers think are overvalued," whereas passively-managed funds, also known as index funds, "simply track a designated portfolio").

As with all 403(b) plans, there are expenses associated with operating the plan. First, each investment charges an investment-management fee. ECF No. 28 at 4. An investment-management fee is reflected as an "expense ratio"—a percentage-based deduction against a participant's total assets in the investment. Compl. ¶ 77. Second, plan participants must pay for recordkeeping services. *Id*. ¶ 51. The scope of those services varies significantly from plan to plan and

---

[2] These 403(b) plans can be sponsored only by tax-exempt organizations. They are similar to 401(k) plans but with several differences, including that they may offer only annuities and mutual funds as investment options. *See* 26 U.S.C. §§ 403(b)(1), (b)(7).

recordkeeper to recordkeeper. Basic services provided to all plans include such things as maintaining plan records, tracking participant account balances, and processing participant investment instructions. A plan, however, "also may offer a host of additional services." ECF No. 28 at 4 n.7. There are increased fees associated with these optional services. *Id*. at n.8. Plan participants typically pay for recordkeeping via a flat fee to the recordkeeper, an asset-based fee, "revenue sharing," or some combination of the three. Compl. ¶¶ 30, 48. Here, Plaintiffs allege plan participants paid for Fidelity's recordkeeping services through revenue sharing. *Id*. ¶ 51. They do not allege that all participants paid the same fees for recordkeeping services.

## II.    Procedural History

Plaintiffs are former Children's Hospital employees and former plan participants. *Id*. ¶¶ 9–12. Plaintiffs do not allege how much they personally paid in recordkeeping fees (if anything) or that they participated in the Plan after 2019.

Plaintiffs bring three claims. In Count I, Plaintiffs allege that Children's Hospital breached the fiduciary duties of prudence and loyalty under ERISA, 29 U.S.C. § 1104(a)(1), in three ways: (1) by offering the allegedly imprudent Freedom Funds (Compl. ¶¶ 60–82); (2) by allowing the plan's participants to pay "excessive" recordkeeping fees (*id*. ¶¶ 50–59); and (3) by offering an "excessively expensive" investment menu (*id*. ¶¶ 83–85). In Count II, Plaintiffs allege that Children's Hospital failed to monitor investment personnel. *Id*. ¶¶ 110–18. In Count III, Plaintiffs allege that any non-fiduciary defendant is liable for knowing participation in a breach of trust. *Id*. ¶ 119–21.

Defendants moved to dismiss all claims, arguing that the allegations were insufficient to state a claim. ECF Nos. 27 & 28. The Court denied that motion. ECF No. 56. The Court's Order concluded that Plaintiffs pleaded legally sufficient claims based on the following allegations:

- "Plaintiffs compare the Active Suite [*i.e.*, actively managed target-date funds] to passively-

managed target date funds … offered by the same company and to other similarly-sized, actively-managed target date funds offered by various companies, such as by providing data on annualized returns."

- "Plaintiffs also allege that Defendants never undertook a review of the performance of the funds comprising the Active Suite and that several of the funds lacked a sufficient performance history to enable fiduciaries to perform a meaningful analysis."

- "Plaintiffs buttress their claims of underperformance by describing various articles that were critical of the Active Suite and by noting net outflows from the Active Suite to other investments."

- "Plaintiffs further claim that Defendants failed to offer available, lower-cost share classes for many of the Plan's funds."

- "Plaintiffs also allege Defendants allowed recordkeeping and administrative fees that far exceeded the reasonable market rate, listing the average per person fees paid by seven other similarly sized and comparable defined contribution plans."

Order at 1 (quotation marks and citations omitted). Based on these allegations, the Court concluded that Plaintiffs' complaint started viable claims and could proceed to discovery.

## **LEGAL STANDARD**

District courts may certify an order for interlocutory appeal if the order "(1) involves a controlling question of law (2) as to which there are grounds for a substantial difference of opinion and (3) an immediate appeal would materially advance the ultimate termination of the litigation." *Waters v. Day & Zimmermann NPS, Inc.*, No. CV 19-11585-NMG, 2020 WL 4754984, at *1 (D. Mass. Aug. 14, 2020) (citing 28 U.S.C. § 1292(b)).

## **ARGUMENT**

This Court should certify the Order for interlocutory review because all three of 28 U.S.C. § 1292(b)'s requirements are satisfied.

## I.    **The Order Involves A Controlling Question Of Law.**

A question of law is "controlling" if reversal would terminate the action, *Philip Morris Inc. v. Harshbarger*, 957 F. Supp. 327, 330 (D. Mass. 1997), or "if reversal would dramatically alter

the scope of the case." *Waters*, 2020 WL 4754984, at *2. "Such questions typically implicate a pure legal principle that can be resolved without extensive consultation to the record." *Meijer, Inc. v. Ranbaxy Inc.*, 245 F. Supp. 3d 312, 315 (D. Mass. 2017) (citation omitted). Here, Defendants satisfy both elements of this requirement because resolving the legal question would dramatically alter the scope of the case and the question implicates a pure legal principle that can be resolved without extensive consultation to the record. Thus, the Order presents a "question of law" that is "controlling" in this case. 28 U.S.C. § 1292(b).

### A.    The Order Presents A Question Of Law.

As a starting matter, this issue—the proper pleading standard for an ERISA fiduciary-duty claim—presents a "question of law." *Id*. Under ERISA, fiduciaries must act solely in the interest of plan participants and beneficiaries and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use." 29 U.S.C. § 1104(a)(1)(B). What ERISA plaintiffs must allege to state a claim for the breach of these fiduciary duties is a legal question. Some courts, for example, have held that a complaint that does not make direct allegations of a flawed fiduciary process but relies on allegations about the process's results, must include sufficient allegations for a court to "infer . . . that the process was flawed." *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 278 (8th Cir. 2022) (quotation marks and citation omitted). These allegations must "nudg[e] an inference of imprudence from possible to plausible," and must provide "a sound basis for comparison—a meaningful benchmark." *Id*. (quotation marks and citation omitted). The Supreme Court has directed that "the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, and courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes*, 142 S. Ct. at 742 (2022).

*Hughes* confirms that the proper pleading standard for ERISA fiduciary-breach claims is a question of law. The Supreme Court granted a writ of certiorari in *Hughes* to address this pleading standard, although the Court did not fully resolve the issue. *See* Petition for a Writ of Certiorari at i, *Hughes v. Northwestern Univ.*, No. 19-1401 (U.S. June 19, 2020) (asking the Supreme Court to decide "[w]hether allegations that a defined-contribution retirement plan paid or charged its participants fees that substantially exceeded fees for alternative available investment products or services are sufficient to state a claim against plan fiduciaries for breach of the duty of prudence under ERISA, 29 U.S.C. § 1104(a)(1)(B)"). Still, in remanding the case, the Supreme Court directed the lower court to decide how to apply the *Twombly* and *Iqbal* pleading standard in the specific context of ERISA fiduciary-breach claims. *Hughes*, 142 S. Ct. at 742. *See also infra*, § II (discussing split of authority following *Hughes*).

The First Circuit likewise has construed the legal question of the proper pleading standard for ERISA fiduciary-duty claims but has not fully resolved this issue. According to the First Circuit, Plaintiffs "need to point to something more than" an allegation that the plan's choices made it a "severe outlier" as compared to industry averages. *Barchock v. CVS Health Corp.*, 886 F.3d 43, 52, 55 (1st Cir. 2018). Mere "cavils about deviation from industry standards" are not enough. *Id.* at 55. Since *Hughes*, however, several other circuit courts have determined that when plaintiffs support claims of imprudence with allegations about funds that supposedly cost less and/or performed better, or allegedly similar plans that paid less for recordkeeping, plaintiffs need to (1) characterize the challenged fees and/or fund performance and (2) provide apples-to-apples comparisons. *See, e.g.*, *Smith*, 37 F.4th at 1169; *Albert v. Oshkosh Corp.*, 47 F.4th 570, 582 (7th Cir. 2022), *reh'g denied*, No. 21-2789, 2022 WL 4372363 (7th Cir. Sept. 21, 2022); *Matousek*, 51 F.4th at 279.

The procedural posture here underscores that this pleading-standard question is a question of law. "[M]otions to dismiss based on the failure to state a claim present quintessential controlling questions of law for the purpose of § 1292(b)." *SEC v. Rocklage*, No. 05-CV-10074-MEL, 2005 WL 8175998, at *2 (D. Mass. Dec. 14, 2005) (certifying § 1292(b) appeal); *see also In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 626 (7th Cir. 2010) ("Decisions holding that the application of a legal standard is a controlling question of law within the meaning of section 1292(b) are numerous."). Finally, this legal question—which was addressed on the pleadings— "can be resolved without extensive consultation to the record." *Meijer*, 245 F. Supp. 3d at 315. Indeed, at this early stage of litigation, there is little record to consult. *See Johansen v. Liberty Mut. Grp.*, No. 1:15-CV-12920-ADB, 2017 WL 937712, at *1 (D. Mass. Mar. 9, 2017) (explaining that a question is legal when "the First Circuit can make [the] determination with minimal review of the factual record because it only requires statutory and case law interpretation").

## B. The Question Of Law Presented By The Order Is Controlling.

By the same token, this question of law is "controlling." 28 U.S.C. § 1292(b). "While this phrase is often understood to mean that resolution of the issue will resolve the action entirely, it has a much broader meaning in the context of § 1292(b)." 19 James William Moore, *Moore's Federal Practice - Civil* § 203.31 (2023). "Of course, if resolution of the question being challenged on appeal will terminate the action in the district court, it is clearly controlling." *Id.*

Here, the legal question is "clearly controlling." *Id.* If the First Circuit were to take up this appeal and adopt the pleading standard urged by Defendants, it would dispose of this litigation. This is a textbook "controlling" question. *See id.* ("Controlling questions of law that fall within this category of dispositive issues include the question of whether a claim exists as a matter of law."); *Meijer*, 245 F. Supp. 3d at 315 (certifying § 1292(b) appeal, noting that, "[i]f the First Circuit finds those claims precluded by [federal statute], they will be dismissed, thereby

terminating the action"); *Philip Morris*, 957 F. Supp. at 330 (certifying § 1292(b) appeal when reversal of the district court's order would "probably" terminate the action).

Even if the First Circuit agrees with Defendants only in part, that more limited ruling would still satisfy this factor. Dismissing any of Plaintiffs' theories would significantly narrow their claims and streamline this litigation. This ability to significantly narrow the scope of the case further shows the question of law is controlling. *See, e.g.*, *Waters*, 2020 WL 4754984, at *2.

**C.    Review Is Also Warranted Because The Order Presents An Important Issue That Has Evaded First Circuit Review.**

Although the foregoing discussion already shows "a controlling question of law," 28 U.S.C. § 1292(b), other considerations sometimes evaluated under this factor further support interlocutory review.

For instance, courts may consider whether the legal issue to be appealed is "important to other cases." 16 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Jurisdiction* § 3930 (3d ed.) ("The opportunity to achieve appellate resolution of an issue important to other cases may provide an additional reason for certification, but cannot be a requirement."). The pleading-standard question is important not just here, but for many other cases as well. In recent weeks, decisions in two other cases in this District addressed a similar legal question as the Order. *See, e.g.*, *Norton v. Mass. Gen. Brigham Inc.*, No. 1:22-cv-10045-AK (D. Mass.), ECF No. 69 (denying motion to dismiss recordkeeping claim, declining to follow "cases from other circuits in which claims of a breach of prudence based on excessive recordkeeping fees required more precise factual allegations to demonstrate that the services of the comparator plans are like the plan at issue" and describing "the absence of First Circuit authority that directly addresses the question" of the applicable pleading standard); *see also Brown v. MITRE Corp.*, No. 22-CV-10976-DJC, 2023 WL 2383772, at *1 (D. Mass. Mar. 6, 2023) (acknowledging split of authority on pleading-

10

standard issue but allowing ERISA fiduciary-duty claims to proceed); *see also* Order (citing *MITRE*, 2023 WL 2383772, at *1).

More broadly, this issue has nationwide importance, as "ERISA class actions are one of the fastest-growing areas of litigation." Brief of Amicus Curiae the U.S. Chamber of Commerce at 2, *Hughes*, No. 19-1401 (U.S. Oct. 28, 2021) ("What began as a trickle in the early 2000s (mostly lawsuits against large public companies) has in recent years become a tidal wave. Cases increased five-fold from 2019 to 2020, targeting not just for-profit businesses large and small, but also healthcare systems, universities, and other nonprofits—even the Red Cross."). If the First Circuit does not have the opportunity to address this issue, district courts within it will continue to see a cascade of fiduciary-duty suits that will all proceed to burdensome class-wide discovery without satisfying the pleading standards that govern in other circuits. *See infra*, § III (discussing discovery burdens).

Despite the importance of this issue, however, it has evaded review by the First Circuit. Courts within this Circuit have identified an intra-Circuit "trend" of refusing to dismiss duty-of-prudence claims, declining to follow guidance from other circuits. *See Norton*, ECF No. 69 ("[T]his Court is persuaded by the trend within the First Circuit's district courts of allowing similar complaints to survive motions to dismiss and proceed to discovery.") (collecting cases).[3] When a trial court fully dismisses an ERISA plaintiff's complaint, the appellate court has an opportunity to review that dismissal as a final judgment, and the court will then be in a position to analyze the

---

[3] Many cases from courts within this District, however, were decided before the Supreme Court's guidance that "courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise" in evaluating fiduciary-duty claims. *Hughes*, 142 S. Ct. at 742. Although other circuits (*e.g.*, the Sixth, Seventh, and Eighth Circuits) have evaluated the pleading standard for imprudence claims in light of that Supreme Court guidance, the First Circuit has not had that opportunity.

issue of the proper pleading standard. But when a trial court declines to fully dismiss an ERISA plaintiff's complaint, no immediate appeal is available as of right, and any review typically must await a final judgment—which, in the context of costly ERISA class action litigation, might take many years, or in most cases, might never arrive. *See Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.* ("*St. Vincent*"), 712 F.3d 705, 719 (2d Cir. 2013) (noting that "the prospect of discovery in a suit claiming breach of fiduciary duty is ominous, potentially exposing the ERISA fiduciary to probing and costly inquiries and document requests," and increased settlement pressure). Then, even if a case proceeded through trial, on eventual appellate review, it would make little sense to revisit the stale issue of the pleading standard.

This dynamic illustrates why interlocutory review is necessary. Without it, district courts in this Circuit may continue to rely on a "trend" (*Norton*, ECF No. 69) of denying motions to dismiss duty-of-prudence claims, without the First Circuit having the opportunity to address the propriety of that trend. *See also* Wright & Miller, § 3930 (suggesting that interlocutory appeals "might serve the additional purpose[s] … of providing a vehicle for appellate review of issues that characteristically evade review on appeal from a final judgment"); *cf. Boniface v. Viliena*, 417 F. Supp. 3d 113, 124 (D. Mass. 2019) (certifying § 1292(b) appeal when the defendant likely would "be unable to proceed in this normal course or seek relief through a post-judgment appeal").

## II. There Are Substantial Grounds For A Difference Of Opinion On This Legal Question.

"A substantial ground for a difference of opinion arises where an issue involves 'one or more difficult and pivotal questions of law not settled by controlling authority.'" *Meijer*, 245 F. Supp. 3d at 315 (quoting *Philip Morris*, 957 F. Supp. at 330). This requirement is met here.

*First*, this Court implicitly concluded that the issues here are not settled by existing First Circuit authority. Although Defendants relied on the First Circuit's *Barchock* decision throughout their briefing (*see generally* ECF No. 28), the Order did not cite that decision. Instead, the Order primarily cited other decisions from within this District. *See* Order. Regardless of whether *Barchock* bears on this pleading-standard question, however, there is no First Circuit authority that settles the issue in Plaintiffs' favor. This lack of controlling First Circuit precedent strongly supports certifying this appeal. *See SEC v. Sargent*, 605 F. Supp. 3d 316, 319 (D. Mass. 2022) (certifying § 1292(b) appeal when appellate authority, "while indicative, is not definitive of the First Circuit's position"); *Miara v. First Allmerica Fin. Life Ins. Co*., 379 F. Supp. 2d 20, 68 (D. Mass. 2005) (certifying § 1292(b) appeal on question of ERISA preemption because the court, while "confident of its own analysis of the matter," would benefit from" a "definitive decision from the First Circuit to put to rest any confusion in this area once and for all").

*Second*, decisions from other courts of appeals show a difference of opinion on the sufficiency of the allegations Plaintiffs must plead to adequately allege a fiduciary-duty claim. *See Moore's*, § 203.31 ("A 'substantial ground for difference of opinion' on an issue may exist if other circuits have come to differing conclusions on a matter that the relevant circuit has not yet addressed.").

**Recordkeeping-fee claims**. Many courts of appeals—citing the Supreme Court's guidance in *Hughes*—have affirmed dismissals of duty-of-prudence claims premised on allegedly excessive recordkeeping fees. In doing so, these courts of appeals have found that mere allegations that alleged comparator plans paid less for recordkeeping services is not enough to support a plausible

inference of imprudence.[4] Although the Third Circuit (before the Supreme Court's *Hughes* ruling) took a relatively lenient view of the pleading requirements for duty-of-prudence claims, the Third Circuit's decision has not dissuaded courts in that circuit from following the more recent authority from other circuits.[5] And the Ninth Circuit has sent mixed messages within its own unpublished decisions on this question.[6]

---

[4] *See, e.g.*, *Albert*, 47 F.4th at 580 (affirming a Rule 12(b)(6) dismissal of a recordkeeping-fee claim virtually identical to that here because allegations that the "[p]lan paid higher recordkeeping fees than a potentially random assortment of nine other plans from around the country" did not support a plausible inference of imprudence); *Smith*, 37 F.4th at 1169 (6th Cir. 2022) (same, noting that the plaintiff failed to allege equivalent comparator data, and thus failed "to create an inference that [the retirement plan] was imprudent to choose recordkeeping fees" that were allegedly higher than other plans); *Matousek*, 51 F.4th 274 at 289 (same, determining that the plaintiffs failed to offer proper comparator data, "[a]nd without a meaningful benchmark, the plaintiffs have not created a plausible inference that the decision-making process itself was flawed"); *Forman v. TriHealth, Inc*., 40 F.4th 443, 449 (6th Cir. 2022) (affirming dismissal in part, citing *Smith* and noting that its "principles demonstrate the importance of a sound basis for comparison in imprudence claims").

The Seventh Circuit recently issued another decision on remand from the Supreme Court decision in *Hughes*. *Hughes v. Nw. Univ.*, No. 18-2569, 2023 WL 2607921, at *11 (7th Cir. Mar. 23, 2023). Although it held that two fiduciary-duty claims in that case survived dismissal, the Seventh Circuit cited *Albert* repeatedly and reaffirmed much of its reasoning. *See, e.g.*, *id*. at *5 (noting that *Albert* correctly "determined that *Hughes* left" a portion of a prior Seventh Circuit decision "untouched"); *id*. at *11 (citing *Albert* and the holding of a previous decision that it relied on, and stating, "[t]his holding remains correct"); *id*. (describing the disposition as consistent with *Albert*'s description of a "'context-sensitive scrutiny of a complaint's allegations' courts perform on a motion to dismiss" (quoting 47 F.4th at 580)). The Seventh Circuit's continued grappling with this issue simply underscores the substantial grounds for disagreement on this question.

[5] *Sweda v. Univ. of Pennsylvania*, 923 F.3d 320, 340 (3d Cir. 2019) (reversing dismissal of some fiduciary-duty claims); *Mator v. Wesco Distrib., Inc.*, No. 21-403, 2022 WL 3566108, at *7 (W.D. Pa. Aug. 18, 2022) (dismissing excessive-fees and share-class claims under *Sweda* and *Smith*), *appeal filed*, No. 22-2552 (3d Cir.); *Krutchen v. Ricoh USA, Inc.*, No. 22-cv-678, 2022 WL 16950264, at *3 (E.D. Pa. Nov. 15, 2022) (dismissing excessive-fees claims under *Sweda*, *Smith*, *Albert*, and *Matousek*).

[6] *Compare Kong v. Trader Joe's Co*., No. 20-56415, 2022 WL 1125667, at *1 (9th Cir. Apr. 15, 2022) (reversing dismissal, holding that "the operative complaint plausibly alleges a failure to provide cost-effective investments with reasonable fees"), *and Davis v. Salesforce.com, Inc.*, No. 21-15867, 2022 WL 1055557, at *1 (9th Cir. Apr. 8, 2022) (reversing dismissal, holding that the plaintiffs "adequately alleged a claim for breach of the duty of prudence"), *with White v. Chevron Corp.*, 752 F. App'x 453, 455 (9th Cir. 2018) (affirming dismissal of claims for breaches of the

**TDFs**. Courts have also split on the pleading-standard question when addressing allegations that a plan offered certain TDFs that cost more and/or "underperformed" other potential investment options in the market.

Indeed, courts of appeals have universally rejected fiduciary breach claims regarding TDFs—including the same Freedom Funds at issue in this case—because differences in investment style, risks, strategies, and holdings render them inapt benchmarks for each other. *See Smith*, 37 F.4th at 1167 (affirming dismissal regarding allegations of the Freedom Funds and Freedom Index Funds); *Salesforce.com*, 2022 WL 1055557, at *2 n.1 (same as to JP Morgan TDFs); *Meiners*, 898 F.3d at 823 (same as to Wells Fargo and Vanguard TDFs). Many district courts have followed suit.[7] These courts have held that "[s]imply labeling funds as 'comparable' or 'peer'" is "insufficient to establish that those funds are meaningful benchmarks." *See, e.g.*, *Locascio*, 2023 WL 320000, at *6. That is particularly true when plaintiffs seek to compare actively-managed funds, like the Freedom Funds, to passively-managed funds—like the Index Funds that Plaintiffs alleged as a comparator in this case. *See Smith*, 37 F.4th at 1167 (rejecting comparison of Freedom Funds to Fidelity Index TDFs, explaining that active management requires

---

fiduciary duties of loyalty and prudence, holding that the plaintiffs' allegations "showed only that [the defendant] could have chosen different vehicles for investment that performed better during the relevant period, or sought lower fees for administration of the fund" and that "[n]one of the allegations made it more probable than not that any breach of a fiduciary duty had occurred").

[7] *See Locascio v. Fluor Corp.*, No. 3:22-CV-0154-X, 2023 WL 320000, at *1 (N.D. Tex. Jan. 18, 2023) (dismissing claim alleging Freedom Funds were imprudent); *Ruilova v. Yale-New Haven Hosp., Inc.*, No. 3:22-cv-00111-MPS, 2023 WL 2301962, at *1 (D. Conn. Mar. 1, 2023) (dismissing the same underperformance claim based on the same Freedom Funds at issue here); *Enos v. Adidas Am., Inc.*, No. 3:19-CV-01073-YY, 2021 WL 5622121, at *7 (D. Or. Aug. 26, 2021) (dismissing fiduciary-breach claims involving T. Rowe Price, Fidelity and Vanguard TDFs), *adopted*, 2021 WL 5611481 (D. Or. Nov. 30, 2021); *Tullgren v. Booz Allen Hamilton*, No. 1:22-cv-00856-MSN-IDD, 2023 WL 2307615, at *1 (E.D. Va. Mar. 1, 2023) (same as to Fidelity Index, American, T. Rowe Price, and Vanguard TDFs; *Hall v. Capital One Fin. Corp.*, No. 1:22-cv-00857-MSN-JFA, 2023 WL 2333304, at *1 (E.D. Va. Mar. 1, 2023) (same).

more "judgment and expertise" and is "expected" to cost more); *Ruilova*, 2023 WL 2301962, at *1 (same); *Salesforce.com*, 2022 WL 1055557, at *2 n.1 (same as to actively managed and passively managed JPMorgan TDFs).

Some district court decisions have gone the other way, although these rulings largely predate the appellate authorities summarized above and the Supreme Court's decision in *Hughes*.[8]

As to the allegations of investment underperformance, courts of appeals (and many district courts) have also found that "[m]erely pointing to another investment that has performed better in a five-year snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision." *Smith*, 37 F.4th at 1166 (affirming dismissal as to Freedom Funds); *Forman*, 40 F.4th at 49 ("Although ERISA does not allow fiduciaries merely to offer a broad range of options and call it a day, a showing of imprudence cannot come down to simply pointing to a fund with better performance." (quotation marks omitted)); *Meiners*, 898 F.3d at 823 ("No authority requires a fiduciary to pick the best performing fund."); *White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2017 WL 2352137, at *14 (N.D. Cal. May 31, 2017) ("*White II*") ("[P]oor performance, standing alone, is not sufficient to create a reasonable inference that plan administrators failed to" act with the duty of prudence "either when the investment was selected or as its underperformance emerged."), *aff'd*, *White III*, 752 F. App'x 455; *St. Vincent*, 712 F.3d at

---

[8] *See, e.g.*, *In re Biogen, Inc. ERISA Litig.*, No. 20-CV-11325-DJC, 2021 WL 3116331, at *3 (D. Mass. July 22, 2021); *Tracey v. MIT*, No. CV 16-11620-NMG, 2017 WL 4478239, at *2 (D. Mass. Oct. 4, 2017); *Velazquez v. Massachusetts Fin. Servs. Co.*, 320 F. Supp. 3d 252, 255 (D. Mass. 2018); *see also* ECF No. 40 at 2 n.1 (collecting cases); *Meiners*, 898 F.3d at 823 (2018 decision noting that "[a] few district court opinions appear to support [the plaintiff's] argument, but we do not find them persuasive").

718 (allegations that "better investment opportunities were available at the time of the relevant decisions" are insufficient).[9]

And the supposed "red flags" that Plaintiffs alleged here with respect to the Freedom Funds have also been rejected by the Sixth Circuit, as well as district courts in other jurisdictions. *Smith*, 37 F.4th at 1168 ("Nothing" about the Freedom Funds' reputation would have caused a prudent plan fiduciary to "precipitously dump[] them."); *Locascio*, 2023 WL 320000, at *6 (similar); *Ruilova*, 2023 WL 2301962, at *1 (similar).

The Order thus implicates continuing disagreement as to what Plaintiffs must plead to challenge the cost and/or performance of TDFs, such as the Freedom Funds.

**Share-class allegations**. The Order declined to follow "ample authority [that] holds that merely alleging that a plan offered retail rather than institutional share classes is insufficient to

---

[9] *See also, e.g.*, *Locascio*, 2023 WL 320000, at *5 (plaintiffs' allegations that the "alternative" TDFs had better three- and five-year performance returns than the Freedom Funds during discrete points of time "does little to aid the court" in inferring a "flawed fiduciary process"); *Ruilova*, 2023 WL 2301962, at *1 (same); *Beldock v. Microsoft Corp.*, No. C22-1082JLR, 2023 WL 1798171, at *2 (W.D. Wash. Feb. 7, 2023) (finding three- and five-year performance histories insufficient to infer imprudence).

carry a claim for fiduciary breach." *White II*, 2017 WL 2352137, at *14, *aff'd*, *White III*, 752 F. App'x 453.[10] Instead, it followed certain cases reaching the opposite conclusion. *See* Order.[11]

That courts have split on these issues supports interlocutory review. *Waters*, 2020 WL 4754984, at *3 (certifying § 1292(b) appeal when district courts had taken different positions on the same question). The scope of the disagreement affirms the importance of First Circuit guidance to district courts within this Circuit. *See Natale v. Pfizer, Inc.*, 379 F. Supp. 2d 161, 182 & n.29 (D. Mass. 2005) (certifying § 1292(b) appeal, noting that the present case, "class action lawsuits filed within the state and federal courts within this Circuit," and courts in other jurisdictions would benefit from the First Circuit's review), *aff'd*, 424 F.3d 43 (1st Cir. 2005).

## III.    An Immediate Appeal Would Materially Advance The Ultimate Termination Of The Litigation.

"The requirement that an appeal will materially advance the ultimate termination of the litigation is 'closely tied' to the controlling-question-of-law element." *Meijer*, 245 F. Supp. 3d at 315 (quoting *Philip Morris*, 957 F. Supp. at 330). "This condition is satisfied if reversal of the

---

[10] *See also, e.g.*, *Mator*, 2022 WL 3566108, at *9 (dismissing complaint with prejudice and reiterating court's prior conclusion that the plaintiffs failed to state a claim because it was insufficient to allege that the defendants imprudently chose mutual fund share classes with higher costs even though less expensive class shares of the same funds were available); *Brown v. Daikin Am., Inc.*, No. 18-cv-11091, 2021 WL 1758898, at *7 (S.D.N.Y. May 4, 2021) (holding the mere fact that the defendant selected retail share classes for certain investment options could not state an imprudence claim); *Ferguson v. Ruane Cuniff & Goldfarb Inc.*, No. 17-CV-6685 (ALC), 2019 WL 4466714, at *6 (S.D.N.Y. Sept. 18, 2019) ("Plaintiffs' allegations that the Plan included high-cost share classes of investment options when lower-cost share classes of those same investment options were available to the Plan do not, as a matter of law, support an inference of a flawed fiduciary process.").

[11] *See, e.g., Sellers v. Trustees of Coll.*, No. CV 22-10912-WGY, 2022 WL 17968685, at *13 (D. Mass. Dec. 27, 2022) (finding that "allegations that cheaper share classes were available are sufficient—when combined with the notice of the potential imprudence of such investments to Boston College from court cases in this District—to survive a motion to dismiss"); *Salesforce.com*, 2022 WL 1055557, at *1 (reversing dismissal, accepting the plaintiffs' allegation regarding "more expensive share classes chosen by Defendants").

Court's decision advances the termination of the litigation." *Id.* at 315 (citation omitted). For the reasons already discussed in explaining why the legal question is controlling, the termination-of-litigation factor is satisfied as well. *See supra*, § I(B); *see also Meijer*, 245 F. Supp. 3d at 315 (determining that this factor was satisfied because, as discussed in connection with the controlling-question-of-law analysis, the interlocutory appeal could result in the case's termination); *Waters*, 2020 WL 4754984, at *2 (determining that this factor was satisfied because, as discussed in connection with the court's controlling-question-of-law analysis, "a reversal would materially impact litigation because it would resolve the case as to 109 current plaintiffs and drastically curtail and simplify pretrial and trial proceedings").

This factor is also satisfied because an interlocutory appeal could avoid the need to engage in time-consuming and costly discovery. This concern is particularly acute because discovery in ERISA litigation can be quite burdensome. As the Second Circuit has explained:

> [T]he prospect of discovery in a suit claiming breach of fiduciary duty is ominous, potentially exposing the ERISA fiduciary to probing and costly inquiries and document requests about its methods and knowledge at the relevant times. This burden, though sometimes appropriate, elevates the possibility that a plaintiff with a largely groundless claim will simply take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value, rather than a reasonably founded hope that the discovery process will reveal relevant evidence.

*St. Vincent*, 712 F.3d at 719 (brackets and quotations omitted); *cf. Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 423–25 (2014) (acknowledging "the threat of costly duty-of-prudence lawsuits" and emphasizing that Rule 12(b)(6) is an "important mechanism for weeding out meritless [ERISA] claims").

An immediate appeal could eliminate or significantly reduce these expenses. It could, for example, save Defendants—as well as Plaintiffs and the Court—the time and expense of discovery (including depositions and expert reports), dispositive and other motion practice, and a potential

trial. *See* Wright & Miller, § 3930 ("The advantages of immediate appeal increase with the probabilities of prompt reversal, the length of the district court proceedings saved by reversal of an erroneous ruling, and the substantiality of the burdens imposed on the parties by a wrong ruling."); *Simmons v. Galvin*, No. CV 01-11040-MLW, 2008 WL 11456109, at *3 (D. Mass. Jan. 16, 2008) (citing Wright & Miller on discovery expense and certifying § 1292(b) appeal, noting "a decision by the First Circuit before discovery and trial could save the substantial time and expense that will be necessary to resolve the" claim); *Rocklage*, 2005 WL 8175998, at *3 (certifying § 1292(b) appeal, holding that "immediate appeal would materially advance the ultimate termination of this case" because that appeal could "avoid complex, protracted, and expensive litigation" and the court was "reluctant to embark upon an extended and costly discovery and trial process until assured that its decision on the motion to dismiss is sustained").

In fact, a reversal from the First Circuit on just one of Plaintiffs' claims would significantly streamline this litigation and reduce the burden on both the parties and the district court. For all these reasons, this factor is satisfied.[12]

### CONCLUSION

Defendants respectfully request that the Court certify its Order for interlocutory review.

---

[12] The Court also considered whether Plaintiffs lack Article III standing to "challenge funds in which they did not invest" or recordkeeping fees they do not allege to have paid. *See* Order. All of § 1292(b)'s requirements are met for the standing issue. First, Article III standing is clearly a controlling legal question, as a legal determination that Plaintiffs lack standing would eliminate Plaintiffs' ability to assert claims regarding funds in which they never invested, or fees they did not pay. *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1622 (2020). Second, there is a substantial ground for difference of opinion on this question. *Compare, e.g.*, *In re LinkedIn ERISA Litig.*, 2021 WL 5331448, at *4 (N.D. Cal. Nov. 16, 2021) ("[D]istrict courts across the country have largely held that ERISA plaintiffs do not have standing to challenge the offering of specific funds that they did not allege that they personally invested in.") (collecting cases), *with* Order (stating that Defendants' standing "argument has been rejected by several courts"). Third, a favorable ruling for Defendants on the Article III standing question would materially advance the termination of this litigation—it would end Plaintiffs' ability to assert the claims pressed in the Complaint.

Dated:  April 14, 2023

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP


By: /s/ *Keri L. Engelman*
Keri L. Engelman (BBO #704360)
One Federal Street
Boston, MA  02110-1726
Tel:  (617) 341-7828
Fax:  (617) 341-7701
keri.engelman@morganlewis.com

Jeremy P. Blumenfeld
1701 Market Street
Philadelphia, PA 19103
Tel:  (215) 963-5000
Fax:  (215) 963-5001
jeremy.blumenfeld@morganlewis.com

Stephanie R. Reiss (*pro hac vice forthcoming*)
One Oxford Centre, 32nd Fl.
Pittsburgh, PA  15219
Tel:  (412) 560-3378
Fax:  (412) 560-3700
stephanie.reiss@morganlewis.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 14th day of April, 2023 I electronically filed the forgoing document with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

<div align="center" style="margin-left:45%">

*/s/ Keri L. Engelman*
Keri L. Engelman

</div>