**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

ADILSON MONTEIRO, *et al.*,

                          Plaintiffs,

        v.

THE CHILDREN'S HOSPITAL
CORPORATION, *et al.*

                        Defendants.

Case No: 1:22-cv-10069-AK

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO CERTIFY INTERLOCUTORY APPEAL
<u>PURSUANT TO 28 U.S.C. § 1292(b)</u>**

## TABLE OF CONTENTS

Table of Authorities ........................................................................................................... ii

I.    INTRODUCTION ....................................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND.........................................................3

III.  ARGUMENT ...........................................................................................................5

        A.    Standard of Review.......................................................................................5

        B.    Defendants Do Not Raise A Controlling Question Of Law And An Immediate
              Appeal Will Not Materially Advance The Ultimate Termination Of The Action...6

        C.    There Is No Substantial Ground For Difference Of Opinion ...............................10

        D.    Defendants' Proposed Pleading "Standard" Would Contradict *Hughes* ..............14

        E.    Defendants' Other Arguments Are Irrelevant To The Certification Criteria ........15

CONCLUSION.......................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albert v. Oshkosh Corp.*,
  47 F.4th 570 (7th Cir. 2022) ........................................................................ passim

*Am. Trucking Associations, Inc. v. Alviti*,
  2020 WL 7212149 (D.R.I. Dec. 7, 2020) ................................................... 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................. 7, 8

*Barchock v. CVS Health Corp.*,
  886 F.3d 43 (1st Cir. 2018) ........................................................................ 6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................. 7, 8

*Boley v. Universal Health Servs., Inc.*,
  36 F.4th 124 (3d Cir. 2022) ....................................................................... 17

*Boniface v. Viliena*,
  417 F. Supp. 3d 113 (D. Mass. 2019) ...................................................... 17

*Brown v. MITRE Corp.*,
  2023 WL 2383772 (D. Mass. Mar. 6, 2023) ........................................... 11, 12

*Camacho v. Puerto Rico Ports Auth.*,
  369 F.3d 570 (1st Cir. 2004) ..................................................................... 5

*Caraballo–Seda v. Municipality of Hormigueros*,
  395 F.3d 7 (2005) ...................................................................................... 5

*Davis v. Salesforce.com, Inc.*,
  2022 WL 1055557 (9th Cir. Apr. 8, 2022) .............................................. 12, 13, 15

*Davis v. Washington Univ. in St. Louis*,
  960 F.3d 478 (8th Cir. 2020) .................................................................... 4

*Durand v. Goguen*,
  419 F. Supp. 3d 174 (D. Mass. 2019) ...................................................... 8

*Enos v. Adidas Am., Inc.*,
  2021 WL 5622121 (D. Or. Aug. 26, 2021) .............................................. 13

*Falberg v. Goldman Sachs Grp., Inc.*,
    2020 WL 3893285 (S.D.N.Y. July 9, 2020) ........................................................... 17

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014) ................................................................................... passim

*Foman v. Davis*,
    371 U.S. 178 (1962) ............................................................................................ 9

*Forman v. TriHealth, Inc.*,
    40 F.4th 443 (6th Cir. 2022) ....................................................................... 10, 12

*Green v. Cosby*,
    99 F. Supp. 3d 223 (D. Mass. 2015) ................................................................... 9

*Hall v. Cap. One Fin. Corp.*,
    2023 WL 2333304 (E.D. Va. Mar. 1, 2023) ................................................... 4, 13

*Henderson v. Bank of New York Mellon Corp.*,
    2016 WL 11003504 (D. Mass. Feb. 17, 2016) ..................................................... 8

*Heng Ren Invs. LP v. Sinovac Biotech Ltd.*,
    609 F. Supp. 3d 17 (D. Mass. 2022) ............................................................... 1, 5

*Hughes v. Nw. Univ.*,
    63 F.4th 615 (7th Cir. 2023) ............................................................................. 12

*Hughes v. Nw. Univ.*,
    142 S. Ct. 737 (2022) ................................................................................. passim

*In re Biogen, Inc. ERISA Litig.*,
    2021 WL 3116331 (D. Mass. July 22, 2021) ..................................................... 13

*In re LinkedIn ERISA Litig.*,
    2021 WL 5331448 (N.D. Cal. Nov. 16, 2021) ................................................... 17

*In re Text Messaging Antitrust Litig.*,
    630 F.3d 622 (7th Cir. 2010) .......................................................................... 8, 9

*Johansen v. Liberty Mut. Grp., Inc.*,
    2017 WL 937712 (D. Mass. Mar. 9, 2017) .................................................. 6, 8, 9

*Johnson v. Watts Regul. Co.*,
    1994 WL 421112 (D.N.H. Aug. 11, 1994) ........................................................... 8

*Kong v. Trader Joe's Co.*,
    2022 WL 1125667 (9th Cir. Apr. 15, 2022) ...................................................... 12

*Krutchen v. Ricoh USA, Inc.*,
    2022 WL 16950264 (E.D. Pa. Nov. 15, 2022) ........................................................ 14

*Locascio v. Fluor Corp.*,
    2023 WL 320000 (N.D. Tex. Jan. 18, 2023) .......................................................... 13

*Mator v. Wesco Distrib., Inc.*,
    2022 WL 3566108 (W.D. Pa. Aug. 18, 2022) ........................................................ 14

*Matousek v. MidAmerican Energy Co.*,
    51 F.4th 274 (8th Cir. 2022) ................................................................. passim

*McGillicuddy v. Clements*,
    746 F.2d 76 (1st Cir. 1984) ............................................................................. 5

*Meijer, Inc. v. Ranbaxy Inc.*,
    245 F. Supp. 3d 312 (D. Mass. 2017) ................................................................ 8, 9

*Meiners v. Wells Fargo & Co.*,
    898 F.3d 820 (8th Cir. 2018) .................................................................. 10, 13, 15

*Miara v. First Allmerica Fin. Life Ins. Co.*,
    379 F. Supp. 2d 20 (D. Mass. 2005) .................................................................. 10

*Millay v. Maine Dep't of Lab. Bureau of Rehab. Servs. Div. for Blind & Visually Impaired*,
    2013 WL 105174 (D. Me. Jan. 8, 2013) ............................................................. 1, 5

*Natale v. Pfizer, Inc.*,
    379 F. Supp. 2d 161 (D. Mass.) ......................................................................... 9

*Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013) ......................................................................... 7, 10

*Philip Morris Inc. v. Harshbarger*,
    957 F. Supp. 327 (D. Mass. 1997) ..................................................................... 9

*Ruilova v. Yale-New Haven Hosp., Inc.*,
    2023 WL 2301962 (D. Conn. Mar. 1, 2023) ....................................................... 13, 14

*SEC v. Sargent*,
    605 F. Supp. 3d 316 (D. Mass. 2022) .................................................................. 10

*Sec. & Exch. Comm'n v. Rocklage*,
    2005 WL 8175998 (D. Mass. Dec. 14, 2005) ..................................................... 8, 9, 17

*Simmons v. Galvin*,
    2008 WL 11456109 (D. Mass. Jan. 16, 2008) ........................................................ 17

*Sitkoff v. BMW of N. Am., Inc.,*
    1995 WL 696894 n.1 (E.D. Pa. Nov. 22, 1995) .............................................. 15, 16

*Smith v. CommonSpirit Health,*
    37 F.4th 1160 (6th Cir. 2022) ................................................................. passim

*Smith v. CommonSpirit Health,*
    2021 WL 4097052 (E.D. Ky. Sept. 8, 2021) ........................................ 13

*Sweda v. Univ. of Pennsylvania,*
    923 F.3d 320 (3d Cir. 2019) ................................................................. 14, 15

*Tibble v. Edison Int'l,*
    575 U.S. 523 (2015) ............................................................................. 7, 13

*Tullgren v. Hamilton,*
    2023 WL 2307615 (E.D. Va. Mar. 1, 2023) ........................................ 4, 13

*Waters v. Day & Zimmermann NPS, Inc.,*
    2020 WL 4754984 (D. Mass. Aug. 14, 2020) ...................................... 9

*White v. Chevron Corp.,*
    752 F. App'x 453 (9th Cir. 2018) ........................................................ 12

*White v. Chevron,*
    2017 WL 2352137 (N.D. Cal. May 31, 2017) ..................................... 10

## <u>Statutes</u>

28 U.S.C. § 1292(b) ........................................................................................ 1, 5, 8

Plaintiffs, Adilson Monteiro, Karen Ginsburg, Jason Lutan, and Brian Minsk (collectively, "Plaintiffs"), individually and as participants of the Children's Hospital Corporation Tax-Deferred Annuity Plan ("Plan"), by and through their attorneys, respectfully submit this opposition to Defendants' Motion to Certify Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) (the "Motion").[1]

## I.    <u>INTRODUCTION</u>

"'As a general rule,' the First Circuit does not grant interlocutory appeals from a denial of a motion to dismiss," *Millay v. Maine Dep't of Lab. Bureau of Rehab. Servs. Div. for Blind & Visually Impaired*, 2013 WL 105174, at *1 (D. Me. Jan. 8, 2013) (citation omitted), which are, in any event, "to be granted sparingly and, in practice, are 'hen's-teeth rare.'" *Heng Ren Invs. LP v. Sinovac Biotech Ltd.*, 609 F. Supp. 3d 17, 21 (D. Mass. 2022). The grounds for Defendants' Motion do not come close to justifying such an extraordinary exception. Instead, their Motion is a desperate and transparent attempt to relitigate their motion to dismiss, which the Court recently denied.

To do so, Defendants try to manufacture a "split of authority" on the pleading standard for fiduciary breach claims, which they maintain requires the First Circuit's immediate attention. This "split" does not exist. The Supreme Court confirmed last year that the applicable pleading standard is "context-specific" and requires courts to "[]evaluate the allegations as a whole" under all circumstances. *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 740 (2022). Any departure from that fact-driven analysis, such as the Seventh Circuit's prior view that the availability of low-cost

---

[1] "Defendants" refers to the defendants in this action, the Children's Hospital Corporation, the Board of Directors of the Children's Hospital Corporation, and the Children's Hospital Corporation Retirement Committee. Defendants' Memorandum of Law in support of their Motion (ECF No. 60) is referred to herein as "Defs. Mem," and the Class Action Complaint (ECF No. 1) is referred to herein as "Complaint" or "CAC."

investments as plan options "eliminated any concerns that other plan options were imprudent" as a "matter of law," was "inconsistent with the context-specific inquiry that ERISA requires." *Id.*

Nevertheless, Defendants' Motion posits that certain courts of appeal and district courts have adopted strict factual pleading requirements that plaintiffs must satisfy to sustain the fiduciary breach claims asserted by Plaintiffs in their Complaint. None of the authorities that Defendants cite, however, actually espouses such bright line rules. Nor can they, as any such rules would be contrary to the Supreme Court's firm instructions in *Hughes*. Rather, those courts, as the Court did in denying Defendants' motion to dismiss, anchor their analysis to the specific facts presented in the pleadings before them.

Consequently, the actual issue is Defendants' dispute with the Court's application of settled law to the particular facts of this case. This, however, is not a basis for certifying interlocutory appeal, which requires a "controlling question of law" at issue and a "substantial ground for a difference of opinion" before the Court should even contemplate exercising its discretion to do so.

Nor would an immediate appeal materially advance the ultimate termination of this action, which is the third prerequisite for certifying an interlocutory appeal. Even if the First Circuit differed from this Court's conclusions on the factual sufficiency of the Complaint, Plaintiffs would request and should be granted leave to address any shortcomings, so the action would not be terminated or materially advanced. This outcome, of course, presupposes that the First Circuit would embrace the bright line pleading requirements urged by Defendants in contravention of the Supreme Court's admonitions in *Hughes*, a highly doubtful outcome.

In sum, Defendants have not only failed to meet the threshold requirements necessary for an interlocutory appeal, but premise their putative appeal on a proposition that directly

contradicts the Supreme Court's recent and clear jurisprudence on pleading fiduciary breach claims. Accordingly, there is no reason for the Court to entertain the Motion, which should be summarily denied.

## II.    **BACKGROUND**

Plaintiffs, who are former participants in the Plan, a defined contribution retirement plan, initiated this action individually and as representatives of a class of similarly situated persons, on behalf of the Plan, and filed their Complaint on January 18, 2022. CAC, ¶¶ 2, 9–12. Plaintiffs allege that Defendants, as fiduciaries of the Plan, failed to engage in a prudent and loyal process for: (1) monitoring the Plan's recordkeeping fees (*id.*, ¶¶ 50–59); (2) selecting and monitoring the Plan's investment options, as indicated by the Plan's retention of the unsuitable Fidelity Freedom funds (the "Active Suite") (*id.*, ¶¶ 60–82); and (3) monitoring the Plan's excessively expensive investment menu, as indicated by the Plan's "total plan cost," a metric to compare plan costs, and the use of the least expensive available share class of the Plan's investment options (*id.*, ¶¶ 83–85). Accordingly, Plaintiffs assert fiduciary breach claims (*id.*, ¶¶ 105–109) (Count I), failure to monitor fiduciaries and co-fiduciary breach claims (*id.*, ¶¶ 110–118) (Count II), and in the alternative, liability for knowing breach of trust claims (*id.*, ¶¶ 119–121) (Count III) against Defendants.

Defendants moved to dismiss on April 7, 2022 for failure to state a claim and lack of standing. ECF Nos. 27, 28. Plaintiffs filing their opposition on April 21, 2022 (ECF No. 29), and Defendants filing their reply on May 12, 2022 (ECF No. 34). In the ensuing months, Defendants filed notices of supplemental authority, submitting *Smith v. CommonSpirit Health*, 37 F.4th 1160 (6th Cir. 2022), *Albert v. Oshkosh Corp.*, 47 F.4th 570 (7th Cir. 2022), *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 281 (8th Cir. 2022), *Tullgren v. Hamilton*, 2023 WL

2307615 (E.D. Va. Mar. 1, 2023), *Hall v. Cap. One Fin. Corp.*, 2023 WL 2333304, at *1 (E.D. Va. Mar. 1, 2023), and *Jones v. DISH Network Corp.*, 1:22-cv-167, Dkt. 72 (D. Colo. Jan. 31, 2023), for the Court's consideration.

On March 15, 2023, the Court issued its order denying Defendants' motion to dismiss. ECF No. 56 (the "Order"). In addition to finding that Plaintiffs have standing to challenge funds in which they did not invest, the Order evaluated each of Plaintiffs' factual allegations supporting Plaintiffs' breach of fiduciary duty claims, including, among other things: (1) the comparison with the "Active Suite to passively-managed target date funds . . . offered  by the same company and to other similarly-sized, actively-managed target date funds offered by various companies"; (2) that "several of the funds 'lacked a sufficient performance history to enable fiduciaries to perform a meaningful review'"; (3) that "Defendants failed to offer available, low-cost share classes for many of the Plan's funds'"; (4) various financial and popular media articles that were critical of the Active Suite"; and (5) "recordkeeping and administrative fees 'that far exceeded the reasonable market rate,' listing the average per participant fees paid by seven other 'similarly sized' and 'comparable' defined contribution plans." *Id.* (citations omitted). The Court concluded that "the facts alleged 'provide a sound basis for comparison—a meaningful benchmark'—suggesting that the Active Suite underperformed and that the Plan was needlessly more expensive than similar plans, which supports a plausible claim that the Defendants' actions breached their fiduciary duties" and sustains the derivative claims. *Id.* (citing *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478 (8th Cir. 2020)).

### III.    ARGUMENT

#### A.    Standard of Review

Under 28 U.S.C. § 1292(b), three criteria must be met before an order may be certified for appeal: (1) the question involves a controlling issue of law; (2) as to which there is a substantial ground for a difference of opinion; and (3) an immediate appeal may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. 1292(b). Certification is not a matter of right, as "[e]ven when all three criteria are satisfied, district courts have unfettered discretion to deny certification." *Am. Trucking Associations, Inc. v. Alviti*, 2020 WL 7212149, at *1 (D.R.I. Dec. 7, 2020) (citation omitted).

Indeed, the "First Circuit has 'repeatedly emphasized that interlocutory certification under 28 U.S.C. § 1292(b) should be used sparingly and only in exceptional circumstances, and where the proposed intermediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority.'" *Millay*, 2013 WL 105174, at *1 (citing cases). Moreover, "'[a]s a general rule,' the First Circuit does not grant interlocutory appeals from a denial of a motion to dismiss." *Id.* (citing *Caraballo–Seda v. Municipality of Hormigueros*, 395 F.3d 7, 9 (2005); *McGillicuddy v. Clements*, 746 F.2d 76, 76 n.1 (1st Cir. 1984)). "[S]uch appeals are to be granted sparingly and, in practice, are 'hen's-teeth rare.'" *Heng Ren Invs. LP*, 609 F. Supp. 3d at 21 (quoting *Camacho v. Puerto Rico Ports Auth.*, 369 F.3d 570, 573 (1st Cir. 2004)).

As discussed below, Defendants have not satisfied the three-prong criteria for certification under 28 U.S.C. § 1292(b), nor is this an "exceptional circumstance" that warrants the Court's exercise of such discretion even if Defendants did meet the three-prong criteria.

**B.      Defendants Do Not Raise A Controlling Question Of Law And An Immediate Appeal Will Not Materially Advance The Ultimate Termination Of The Action**

"[A] question of law is 'controlling' if reversal of the district court's order would terminate the action." *Johansen v. Liberty Mut. Grp., Inc.*, 2017 WL 937712, at *1 (D. Mass. Mar. 9, 2017) (citations omitted and brackets in original). Likewise, a "controlling question of law usually involves 'a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine' rather than an application of law to the facts." *Id.* (citations omitted). Here, Defendants do not raise a "question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *Id.* Rather, Defendants challenge the Court's application of the well-established, fact-based and context-driven pleading standard for fiduciary breach claims, which is not a "question of law."

As the Supreme Court set forth in *Fifth Third Bancorp v. Dudenhoeffer*, the "content of the duty of prudence turns on 'the circumstances . . . prevailing' at the time the fiduciary acts, § 1104(a)(1)(B), [so] the appropriate inquiry will necessarily be context specific." 573 U.S. 409, 425 (2014). Since then, courts, including the First Circuit in *Barchock v. CVS Health Corp.*, 886 F.3d 43 (1st Cir. 2018), and the other authorities cited by Defendants (Defs. Memo, at 7-8), have followed this standard. *See Barchock*, 886 F.3d at 44 ("whether a complaint states a claim of imprudence under ERISA, 'the appropriate inquiry will necessarily be context specific'"); *Smith*, 37 F.4th at 1164–65 ("Because the content of the duty of prudence turns on the circumstances . . . prevailing at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific"); *Albert*, 47 F.4th at 577 ("Courts apply a 'careful, context-sensitive scrutiny of a complaint's allegations" to "divide the plausible sheep from the meritless goats'"); *Matousek*, 51 F.4th at 281 ("Nudging the complaint past the plausibility threshold depends on the "totality of the specific allegations").

-6-

In *Hughes*, however, the Seventh Circuit departed from *Dudenhoeffer* and tried to establish a bright line rule whereby the availability of low-cost investments as plan options "eliminated any concerns that other plan options were imprudent" and thus precluded such fiduciary breach claims as a "matter of law." 142 S. Ct. at 740. The Supreme Court unanimously reversed, explaining that such "categorical rule[s] [are] inconsistent with the context-specific inquiry that ERISA requires," and reiterated that courts must "[]evaluate the allegations as a whole" and "consider whether [the plaintiff] plausibly allege[s] a violation of the duty of prudence as articulated in *Tibble* [*v. Edison Int'l*, 575 U.S. 523 (2015)], applying the pleading standard discussed in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)." *Hughes*, 142 S. Ct. at 740, 742 (citations shortened). Thus, while the proper pleading standard for ERISA fiduciary-breach claims may be a question of law, it is well-settled.[2]

Here, the Court faithfully applied the fact-based and context-driven pleading standard and considered the numerous authorities that Defendants brought to its attention, including all the major cases it cites in support of its Motion. *See* Section II, *supra*. But Defendants do not actually challenge that pleading standard; rather, they take issue with the weight the Court assigned the allegations in the Complaint, *i.e.*, the Court's application of the pleading standard. Defs. Memo, at 8, 12-18 ("plaintiffs need to (1) characterize the challenged fees and/or fund performance and (2) provide apples-to-apples comparisons").

---

[2]Defendants also imply that only "some courts" permit a plaintiff to allege a flawed fiduciary process based on circumstantial facts (Defs. Memo, at 7), Defendants cite no authority that actually disputes this well-established proposition. *See, e.g.*, *Matousek,* 51 F.4th at 278; *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013).

Just as the First Circuit "does not grant interlocutory appeals from a denial of a motion to dismiss" as a "general rule," (*see* Section III.A., *supra*), courts in the Circuit agree that challenges to the application of law to the facts do not present a "question of law." *See Henderson v. Bank of New York Mellon Corp.*, 2016 WL 11003504, at *2 (D. Mass. Feb. 17, 2016) ("[W]hat the framers of § 1292(b) had in mind is more of an abstract legal issue or what might be called one of pure law"); *see, e.g.*, *Johansen*, 2017 WL 937712, at *1 ("the issue of the comprehensiveness of the relief provided to Johansen is not a controlling question of law, and involves both questions of fact and the application of law to facts"); *Durand v. Goguen*, 419 F. Supp. 3d 174, 175–76 (D. Mass. 2019) ("[w]hether [p]etitioner has shown good cause involves the application of law to the facts of his case" and is thus "not a controlling question of law"); *Johnson v. Watts Regul. Co.*, 1994 WL 421112, at *2 (D.N.H. Aug. 11, 1994) ("While the defendants claim there is a substantial ground for difference of opinion concerning a controlling question of law and cite various cases, the real difference of opinion is between the defendants' and the court's application of the law to the particular facts of this case").[3]

_____

[3]Tellingly, Defendants cite only two instances in this Circuit in which an interlocutory appeal was granted on an order denying a motion to dismiss. Defs. Memo, at 9 (citing *Sec. & Exch. Comm'n v. Rocklage*, 2005 WL 8175998 (D. Mass. Dec. 14, 2005), and *Meijer, Inc. v. Ranbaxy Inc.*, 245 F. Supp. 3d 312, 313 (D. Mass. 2017)). In both cases, the "controlling issues of law" were purely legal questions that stood independent of the application of the facts to the pleading standard. *See Rocklage*, 2005 WL 8175998, at *2 ("the purely legal question of whether Rocklage's disclosure to her husband precludes liability for insider trading under the misappropriation theory is dispositive"); *Meijer, Inc.*, 245 F. Supp. 3d at 313 ("all of plaintiffs' claims are predicated on fraud on the FDA. If the First Circuit finds those claims precluded by the FDCA, they will be dismissed, thereby terminating the action"). Meanwhile, *In re Text Messaging Antitrust Litig.*, which Defendants also cite (Defs. Memo, at 9), the Seventh Circuit clarified that it was performing an interlocutory review of the application of the pleading standard because, at the time, "*Twombly* [wa]s a recent decision, and its scope unsettled (especially in light of its successor, *Iqbal*—from which the author of the majority opinion in *Twombly* dissented; and two of the Justices who participated in those cases have since retired). 630 F.3d 622, 626 (7th Cir. 2010). Indeed, the Seventh Circuit expressly prefaced, "[n]ot that routine applications of well-settled legal standards to facts alleged in a complaint are appropriate

Nor would the "question" that Defendants raise be "controlling" because reversal of the Order would not, contrary to Defendants' assertion (Defs. Memo, at 9-10), "terminate the action." *Johansen*, 2017 WL 937712, at *1. Even under the unlikely scenario that the Order is reversed (*see* Section III.D, *infra*), Plaintiffs would be provided leave to amend the Complaint to address any ostensible factual deficiencies. *See, e.g.*, *Green v. Cosby*, 99 F. Supp. 3d 223, 225 (D. Mass. 2015) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given'") (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In contrast, resolution of the FDA preemption issue in *Meijer, Inc.*, one of the Defendants' authorities, would completely dispose of the RICO and antitrust claims asserted there. 245 F. Supp. 3d at 313.[4]

Accordingly, Defendants present no "controlling issue of law" and fail to establish that an immediate appeal may "materially advance the ultimate termination of the litigation" for an interlocutory appeal to be even viable.

---

for interlocutory appeal." *Id.* Defendants cite to no exceptional circumstances to revisit the fact-based and context-driven pleading standard affirmed in *Hughes* here.

[4] Defendants' other authorities likewise pertained to "pure" legal issues that would terminate the action or certain aspects of the action with prejudice. Defs. Memo, at 9–10, 18, 20; *see Waters v. Day & Zimmermann NPS, Inc.*, 2020 WL 4754984, at *2 (D. Mass. Aug. 14, 2020) (personal jurisdiction issue would "resolve the case as to 109 current plaintiffs"); *Natale v. Pfizer, Inc.*, 379 F. Supp. 2d 161, 181 (D. Mass.), *aff'd*, 424 F.3d 43 (1st Cir. 2005) (subject-matter jurisdiction at issue); *Philip Morris Inc. v. Harshbarger*, 957 F. Supp. 327, 328 (D. Mass. 1997) (Federal Cigarette Labeling and Advertising Act preemption); *See Rocklage*, 2005 WL 8175998, at *2 (insider trading liability for spousal disclosure).

### C.    There Is No Substantial Ground For Any Difference Of Opinion

Since the fiduciary breach pleading standard is well-settled,[5] Defendants also do not

actually identify any "difference of opinion," much less a "substantial ground" for that

difference.  As discussed above, Section III.B., *supra*, all of the authorities that Defendants cite

agree with the context-specific framework set forth in *Dudenhoeffer* that *Hughes* reiterated.

Indeed, Defendants cite no authority that disputes the proposition that, as a general matter,

although allegations of excessive fees or underperformance may not always be sufficient to

support a claim of imprudence, allegations of additional indicia of imprudence and support for

the comparisons drawn is sufficient.  *See* Defs. Memo, at 8, 10–11, 13–18.[6]  Courts, including

this Court in its Order, agree that such excessive fee allegations should generally be separately

supported by allegations explaining why such fees are unreasonable, such as underperformance

relative to comparable peers, as in Plaintiffs' pleading.  *See* Order ("the facts alleged 'provide a

sound basis for comparison—a meaningful benchmark'—suggesting that the Active Suite

underperformed and that the Plan was needlessly more expensive than similar plans, which

supports a plausible claim that the Defendants' actions breached their fiduciary duties").

---

[5]The uncontested nature of the pleading standard and Defendants' actual challenge to the application of that pleading standard distinguishes the issues here from the unsettled legal questions raised in *SEC v. Sargent*, 605 F. Supp. 3d 316 (D. Mass. 2022), and *Miara v. First Allmerica Fin. Life Ins. Co.*, 379 F. Supp. 2d 20 (D. Mass. 2005), which Defendants cite (Defs. Memo, at 13).

[6]Defendants refer to *Smith*, 37 F.4th 1160, *Forman v. TriHealth, Inc.*, 40 F.4th 443 (6th Cir. 2022), *Meiners v. Wells Fargo & Co.*, 898 F.3d 820 (8th Cir. 2018), *White v. Chevron*, 2017 WL 2352137 (N.D. Cal. May 31, 2017), and *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Centers Ret. Plan*, 712 F.3d 705, for that uncontroversial principle.  Defs. Memo, at 16.  Though unlikely, it is still possible that allegations of excessive fees or underperformance are sufficient alone to sustain a fiduciary breach claim, such as where fees are so substantial as to eliminate any returns or where the underperformance is so severe and sustained that there can be no reasonable expectation of positive returns.  These hypotheticals confirm the wisdom of the Supreme Court's prohibition against "categorical rules" in *Hughes*.

Of course, the factual permutations of each case are different, so even if certain pleadings share similar facts, the other factual variables may lead courts to reach different results in their application of the "context-specific inquiry that ERISA requires." *Hughes*, 142 S. Ct. at 740. For example, in *Smith*, the Sixth Circuit found that the plaintiff did not "give the context that could move this claim from possibility to plausibility" for her excessive recordkeeping fee claim because she did not "plead[] that the services that CommonSpirit's fees covers are equivalent to those provided by the plans comprising the average in the industry publication that she cites." 37 F.4th at 1169. The complaint in *Norton v. Mass. Gen. Brigham Inc.*, which Defendants cite as an example of a "split" (Defs. Memo, at 10), also did not include such "equivalent services" allegations to support the excessive recordkeeping fee claim, but the court found that the plaintiffs had sufficiently stated a fiduciary breach claim because the *Norton* plaintiffs alleged additional facts not present in *Smith*. No. 1:22-cv-10045-AK, ECF No. 69 (D. Mass. March 15, 2023).

Unlike the *Smith* plaintiff, the *Norton* plaintiffs further pled that the defendants failed to provide any meeting minutes or acknowledgement of whether such documentation existed despite the plaintiffs' request. *Id.* In addition, whereas the *Smith* plaintiff "compare[d] CommonSpirit's fees, for example, to some of the smallest plans on the market," 37 F.4th at 1169, the *Norton* plaintiffs provided "seven similar plans having more than 30,000 participants and approximately $3 billion in assets" as comparators. *Id.*; *see Brown v. MITRE Corp.*, 2023 WL 2383772, at *5 (D. Mass. Mar. 6, 2023) ("Although the court concluded that the plaintiff failed to allege that the recordkeeping fees were excessive relative to the services rendered, *id*. at 580 (citing *Smith*, 40 F.4th at 449), the plaintiff in *Albert* does not appear to have alleged, as [p]laintiffs do here, that there are two types of recordkeeping services provided by all national

recordkeepers for large plans and that the fiduciary failed to use its substantial bargaining power to obtain these same services at a lower cost"). As such, it should be unsurprising that *Norton* and *Smith* had diverging results.

Here, as in *Norton* and *Brown* and unlike *Smith* and *Albert*, Plaintiffs listed the "average per person fees paid by seven other 'similarly sized' and 'comparable' defined contribution plans" (Order), alleged that those plans and the Plan "received materially identical . . . services," and Defendants did not engage in any examination, comparison, or benchmarking of the Plan's recordkeeping fees. CAC, ¶ 58. Thus, it is likewise unsurprising that the Court reached a different conclusion than that in *Smith* and *Albert*.[7]

Similarly, the Court here reviewed allegations regarding the Active Suite that were not presented in *Smith*. Specifically, unlike in *Smith*, Plaintiffs here identified "other similarly-sized, actively-managed target date funds offered by various companies" as comparators besides the Index Suite. *Compare* Order *with Smith*, 37 F.4th at 1166. Also unlike in *Smith*, the Court here

---

[7] These allegations likewise distinguish the authorities on the other side of the ostensible "split" cited by Defendants (Defs. Memo, at 14 n.4). *See Matousek.*, 51 F.4th at 280-281 ("Rather than point to the fees paid by other specific, comparably sized plans, the plaintiffs rely on industry-wide averages"); *Forman v. TriHealth, Inc.*, 40 F.4th at 449 ("the employees never alleged that these fees were high in relation to the services that the plan provided"). And far from "grappling" with the Supreme Court's reversal in *Hughes*, the Seventh Circuit clarified that, even though no "bright-line rule" remained, certain general principles—*i.e.*, "use of revenue sharing for plan expenses does not amount to a per se violation of fiduciary duty under ERISA"; "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund"; and "plans may generally offer a wide range of investment options and fees without breaching any fiduciary duty"— were still good law because they did not create any "categorical rules." *See Hughes v. Nw. Univ.*, 63 F.4th 615, 623-626 (7th Cir. 2023). Meanwhile, the Ninth Circuit's unpublished diverging case-specific results are certainly not, indicative of a "circuit split," as Defendants suggest, but rather the natural evolution of the jurisprudence on fiduciary breach claims as the issues are better understood over time. (Defs. Memo, at 14 n.6) (citing *Kong v. Trader Joe's Co.*, 2022 WL 1125667 (9th Cir. Apr. 15, 2022), *Davis v. Salesforce.com, Inc.*, 2022 WL 1055557 (9th Cir. Apr. 8, 2022), and *White v. Chevron Corp.*, 752 F. App'x 453, 455 (9th Cir. 2018)).

addressed allegations that "Defendants 'never undertook a review of the lack of performance of the funds comprising' the Active Suite and that several of the funds 'lacked a sufficient performance history to enable fiduciaries to perform a meaningful analysis.'" Order; *cf. Smith*, 37 F.4th at 1167–68. In addition, the performance period at issue here is different than that in *Smith*. *Compare* CAC, ¶ 92 *with Smith v. CommonSpirit Health*, 2021 WL 4097052, at *1 (E.D. Ky. Sept. 8, 2021); *see also Tibble*, 575 U.S. at 529 ("'[t]he trustee cannot assume that if investments are legal and proper for retention at the beginning of the trust, or when purchased, they will remain so indefinitely,' and must 'systematic[ally] conside[r] all the investments of the trust at regular intervals' to ensure that they are appropriate") (citation omitted and brackets in original).

Of course, nothing in the context-specific inquiry bars courts from looking for guidance from each other. As the Court and Defendants recognize, numerous other courts have found actionable fiduciary breach claims based on similar allegations regarding the Active Suite. *See In re Biogen, Inc. ERISA Litig.*, 2021 WL 3116331, at *6 (D. Mass. July 22, 2021) (citing cases) (cited in Order); Defs. Memo, at 16 n.8.[8]

---

[8]As Defendants admit, different TDFs were at issue in almost all the supporting authorities they cite, so it is likewise unsurprising that the outcome in those instances were different than the one here. Defs. Memo, at 15, 15 n.7; *see Salesforce.com*, 2022 WL 1055557 (JP Morgan TDFs); *Meiners*, 898 F.3d at 823 (Wells Fargo and Vanguard TDFs); *Enos v. Adidas Am., Inc.*, 2021 WL 5622121, at *7 (D. Or. Aug. 26, 2021) (BlackRock); *Tullgren*, 2023 WL 2307615, at *1 (BlackRock) and *Hall*, 2023 WL 2333304, at *1 (same). Defendants misidentified the TDFs at issue in *Locascio v. Fluor Corp.*, 2023 WL 320000 (N.D. Tex. Jan. 18, 2023), which pertained to BlackRock, rather than Active Suite, TDFs. In *Ruilova v. Yale-New Haven Hosp., Inc.*—Defendants' only supporting authority concerning the Active Suite—the court took issue with the absence of allegations regarding the Active Suite's performance during the class period. 2023 WL 2301962, at *15 (D. Conn. Mar. 1, 2023). Here, the Complaint provides such allegations (CAC, ¶ 80), and *Ruilova* is an outlier (even within the Second Circuit, in which several district courts have sustained claims based on the Active Suite), which suggests that the court there may have been too demanding in its application of the pleading standard.

In sum, Defendants' purported "split of authority" (Defs. Memo, at 13–18) is simply the foreseeable result of the application of a uniform pleading standard to different factual scenarios, rather than a conflict on the applicable standard. Moreover, no such conflict should arise given the Supreme Court's recent clarification in *Hughes* that the pleading standard must always remain fact-driven and context-specific. Indeed, Defendants' assertions belie their own proposition—their distillations of certain authorities indicate that courts simultaneously follow the purportedly "lenient" requirements of the Third Circuit as well as the purportedly "strict" requirements of the Sixth, Seventh, and Eighth Circuits, an impossible task if there was an actual "split." Defs. Memo, at 14 n.5 (explaining the court in *Mator v. Wesco Distrib., Inc.*, 2022 WL 3566108 (W.D. Pa. Aug. 18, 2022) "dismiss[ed] excessive-fee and share-class claims under *Sweda* [*v. v. Univ. of Pennsylvania*, 923 F.3d 320, 330-332 (3d Cir. 2019)] and *Smith*" while the court in *Krutchen v. Ricoh USA, Inc.*, 2022 WL 16950264 (E.D. Pa. Nov. 15, 2022), followed "*Sweda*, *Smith*, *Albert*, and *Matousek*").

### D. Defendants' Proposed Pleading "Standard" Would Contradict *Hughes*

At bottom, Defendants are seeking leave to petition the First Circuit to adopt bright line rules on pleading excessive fee fiduciary breach claims. Specifically, Defendants would like the First Circuit to categorically hold that, as a matter of law: (1) allegations that comparator plans paid less for recordkeeping services cannot support a fiduciary breach claim (Defs. Memo, at 13–14); (2) TDFs have no comparators and are thus invulnerable to fiduciary breach claims because "differences in investment style, risks, strategies, and holdings render them inapt benchmarks for each other" (*id.* at 15–16); (3) five-year performance data cannot support a fiduciary breach claim (*id.* at 16); (4) the qualitative issues such as those identified in the Complaint are

inconsequential to a prudent process (*id.* at 26); and (5) selection of a more expensive share class is not indicative of an imprudent process (*id.* at 17–18).

Setting aside the factual overreach of such positions, *Hughes* and *Dudenhoeffer* make clear that such "categorical rule[s] [are] inconsistent with the context-specific inquiry that ERISA requires." *Hughes*, 142 S. Ct. at 740. Unsurprisingly then, none of the authorities cited by Defendants establish any brightline rules or presumptions on the viability of certain allegations; instead, each conducted a "careful, context-sensitive scrutiny" of the particular allegations at issue. *See, e.g.*, *Smith*, 37 F.4th at 1164–1169; *Meiners*, 898 F.3d at 823–824; *Salesforce.com, Inc.*, 2022 WL 1055557, at *1–*2; *Sweda*, 923 F.3d at 330–332. Accordingly, not only is there no "controlling question of law" or "substantial ground for difference of opinion" at issue with respect to the pleading standard for fiduciary breach claims. Rather, Defendants' endeavor is an ill-fated effort to persuade the First Circuit to reject *Hughes*.

### E.    Defendants' Other Arguments Are Irrelevant To The Certification Criteria

Defendants also resort to a series of irrelevant and desperate pronouncements to compensate for an inability to establish the three prerequisites for an interlocutory appeal, which only highlights the weakness of their Motion. *See Sitkoff v. BMW of N. Am., Inc.*, 1995 WL 696894, at *1 n.1 (E.D. Pa. Nov. 22, 1995) ("It appears to the [c]ourt that plaintiffs have attempted to prevail by means of a variation of the old adage, 'if the facts are against you, argue the law; if the law is against you, argue the facts; if both the facts and the law are against you, throw yourself on the mercy of the Court'"). Unsurprisingly, none of them have merit.

First, Defendants contend that resolution of the pleading standard is "important to other cases." Defs. Memo, at 10–11. But as discussed above, Section III.B-D, *supra*, the pleading standard for fiduciary breach claims is well-established and not disputed. In light of this, and the

context-specific inquiry required of courts reviewing pleadings asserting breaches of fiduciary duty under ERISA, any an immediate appellate review here would have minimal impact on other cases.

Second, Defendants decry the "tidal wave" of fiduciary breach litigation that ostensibly threatens to drown "businesses large and small." Defs. Memo., at 11. This rhetoric is, of course, irrelevant to the certification criteria, and the Supreme Court addressed and rejected a similar economic argument when formulating the "context-specific" standard in *Dudenhoeffer*:

> Petitioners are basically seeking relief from what they believe are meritless, economically burdensome lawsuits . . . [but] we do not believe that the presumption at issue here is an appropriate way to weed out meritless lawsuits or to provide the requisite "balancing." The proposed presumption makes it impossible for a plaintiff to state a duty-of-prudence claim, no matter how meritorious, unless the employer is in very bad economic circumstances. Such a rule does not readily divide the plausible sheep from the meritless goats. That important task can be better accomplished through careful, context-sensitive scrutiny of a complaint's allegations. We consequently stand by our conclusion that the law does not create a special presumption of prudence for ESOP fiduciaries.

573 U.S. at 424–25. It is also relevant to note that retirement plan formation has increased *not decreased* in recent years, despite Defendants' perceived uptick in litigation.

Third, Defendants seek the guise of victims of an "intra-Circuit 'trend'" that the First Circuit cannot set right because the trend has "evaded review by the First Circuit." Defs. Memo, at 11–12. According to Defendants, the First Circuit will not be able to weigh in because of the lack of immediate right to appeal, and there is "little sense to revisit the stale issue of the pleading standard" after a case proceeds to trial. Defs. Memo, at 11–12. In so doing, Defendants implicitly and troublingly impugn the ability of the Court and other district courts in the Circuit to conduct the "important task" of a "careful, context-sensitive scrutiny of a complaint's allegations" assigned by the Supreme Court. *Dudenhoeffer*, 573 U.S. at 425; *see Sitkoff*, 1995 WL 696894, at *1 n.1 ("finding both the facts and the law against them, plaintiffs have transmuted the final admonition [to throw yourself on the mercy of the court] into an attack on

the [c]ourt"). Aside from this unfortunate insinuation, Defendants' proposition is belied by the copious authorities cited throughout their brief; though not yet in the First Circuit, there are numerous appellate court decisions and one recent Supreme Court decision that have reviewed the application of the pleading standard for fiduciary breach claims—all of which this Court considered in rendering the Opinion. *See Hughes*, 142 S. Ct. 737; *see*, e.g., *Smith*, 37 F.4th 1160; *Albert*, 47 F.4th 570; *Matousek*, 51 F.4h 274. As such, the pleading standard has clearly not "evaded review" of appellate courts.[9]

Finally, Defendants argue that the prospect of discovery expenses warrants an immediate appeal, which is another variation of their "economic burden" complaint above. Defs. Memo, at 19–20. As discussed above, the Supreme Court addressed this objection and entrusted this Court and others with the context-driven pleading standard, *see Dudenhoeffer*, 573 U.S. at 424–25. In any event, such a factor can only be considered if, as Defendants' authorities indicate, all three criteria for certification are first met. *See Rocklage*, 2005 WL 8175998, at *2-*3; *Simmons v. Galvin*, 2008 WL 11456109, at *2–*3 (D. Mass. Jan. 16, 2008). As discussed above (*see* Section III.B-C, *supra*), Defendants have failed to do so here.[10]

---

[9]Defendants' only authority supporting immediate appellate review on this basis that the issue will "evade review" certified an interlocutory review because the defendant "will most likely return to his pro se status" and the court did "not have the confidence that he would be able to represent himself effectively though the appellate process." *Boniface v. Viliena*, 417 F. Supp. 3d 113, 124 (D. Mass. 2019). Defendants can hardly claim to face the same financial hardship. CAC, ¶¶ 4-5.

[10]Defendants also argue, in a footnote, that their standing challenge warrants interlocutory appeal. Defs. Br., at 20 n.12. There is, however, no "substantial ground for difference of opinion" on the issue. "The majority of courts considering similar cases both in this district and elsewhere" have held that plaintiffs have standing to recover for excessive fees in plans they did not invest in so long as the "*defendant's conduct* implicates the same set of concerns for all putative class members." *Falberg v. Goldman Sachs Grp., Inc.*, 2020 WL 3893285, at *8 (S.D.N.Y. July 9, 2020) (emphasis in original and citing cases). Indeed, Defendants misleadingly quote *In re LinkedIn ERISA Litig.*, where the court went on to explain that "allegations of investment in a specific fund *is not a prerequisite for standing to challenge plan-wide mismanagement so long as a plaintiff can plead injury to their own plan account*." 2021 WL 5331448 (N.D. Cal. Nov. 16, 2021) (emphasis added). Moreover, both the Third and Seventh Circuits, which are the only courts of appeal to have addressed the issue, have concurred

-17-

**CONCLUSION**

For the foregoing reasons and all those appearing on the record, Plaintiffs respectfully submit the Court should deny the Motion.

Dated: April 28, 2023                                  Respectfully submitted,

                                                      /s/ *Laurie Rubinow*
                                                      James E. Miller
                                                      Laurie Rubinow
                                                      MILLER SHAH LLP
                                                      65 Main Street
                                                      Chester, CT 06412
                                                      Telephone: (866) 540-5505
                                                      Facsimile: (866) 300-7367
                                                      Email: jemiller@millershah.com
                                                              lrubinow@millershah.com

                                                      James C. Shah
                                                      Alec J. Berin
                                                      John C. Roberts
                                                      MILLER SHAH LLP
                                                      1845 Walnut Street, Suite 806
                                                      Philadelphia, PA 19103
                                                      Telephone: (866) 540-5505
                                                      Facsimile: (866) 300-7367
                                                      Email: jcshah@millershah.com
                                                              ajberin@millershah.com
                                                              jcroberts@millershah.com

                                                      Kolin C. Tang
                                                      MILLER SHAH LLP
                                                      19712 MacArthur Blvd.
                                                      Irvine, CA 92612
                                                      Telephone: (866) 540-5505
                                                      Facsimile: (866) 300-7367
                                                      Email: kctang@millershah.com

---

with *Falberg* and the majority of district court cases that found standing. *See Boley v. Universal Health Servs., Inc.*, 36 F.4th 124, 131 (3d Cir. 2022); *accord Albert*, 47 F.4th at 578.

Mark K. Gyandoh
Gabrielle Kelerchian
CAPOZZI ADLER, P.C.
312 Old Lancaster Road
Merion Station, PA 19066
Telephone: (610) 890-0200
Facsimile: (717) 233-4103
Email: markg@capozziadler.com
      gabriellek@capozziadler.com

Donald R. Reavey
CAPOZZI ADLER, P.C.
2933 North Front Street
Harrisburg, PA 17110
Telephone: (717) 233-4101
Facsimile: (717) 233-4103
Email: donr@capozziadler.com

John Roddy
Elizabeth Ryan
BAILEY & GLASSER LLP
176 Federal Street, 5th Floor
Boston, MA 02110
Telephone: (617) 439-6730
Facsimile: (617) 951-3954
Email: jroddy@baileyglasser.com
      eryan@baileyglasser.com

*Attorneys for Plaintiffs, the Plan
and the Proposed Class*

### **CERTIFICATE OF SERVICE**

I hereby certify that on April 28, 2023 a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

/s/ *Laurie Rubinow*
Laurie Rubinow