**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ADILSON MONTEIRO, *et al.*, | Case No.: 1:22-cv-10069- JEK |
| Plaintiffs, | April 28, 2025 |
| v. | |
| THE CHILDREN'S HOSPITAL CORPORATION, *et al.*, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

Table of Authorities.................................................................................................ii

I.      INTRODUCTION ....................................................................................... 1

II.     BACKGROUND ......................................................................................... 2

III.    STANDARD OF REVIEW ......................................................................... 4

IV.     ARGUMENT ............................................................................................... 6

    A.      Certification of the Settlement Class is Appropriate ................................. 6

        1.      The Settlement Class Satisfies Rule 23(a) ................................. 7

            i.      Numerosity........................................................................ 7

            ii.     Commonality..................................................................... 8

            iii.    Typicality .................................................................. 10

            iv.     Adequacy .................................................................. 10

        2.      The Settlement Class Satisfies Rule 23(b)(1) ........................... 12

        3.      Class Counsel should be Appointed as Counsel for the Settlement Class .......................................................................................... 13

    B.      The Settlement, Notice Plan, and Plan of Allocation Warrant Preliminary Approval .................................................................................................. 14

        1.      The Settlement Should be Preliminary Approved ..................... 14

        2.      The Notice Plan Should be Preliminarily Approved.................. 18

        3.      The Plan of Allocation Should be Preliminarily Approved ....... 19

V.      CONCLUSION........................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997).................................................................... 5, 6, 7, 12

*Andrews v. Bechtel Power Corp.*,
    780 F.2d 124 (1st Cir. 1985) ..................................................................11

*Bezdek v. Vibram USA Inc.*,
    79 F.Supp.3d 324 (D. Mass. 2015) ..................................................... 5, 8, 10

*Bowers v. Russell,*
    2025 WL 342077 (D. Mass. Jan. 30, 2025) ............................................ 10

*Bussie v. Allmerica Fin. Corp.*,
    50 F.Supp.2d 59 (D. Mass. 1999) ........................................................ 17

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship,*
    100 F.3d 1041 (1st Cir. 1996) ......................................................... 5, 6, 14

*Cunningham v. Cornell Univ.*,
    2019 WL 275827 (S.D.N.Y. Jan. 22, 2019) ............................................ 9

*DeRosa v. Massachusetts Bay Commuter Rail Co.*,
    694 F.Supp.2d 87 (D. Mass. 2010) ....................................................... 7

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
    177 F.R.D. 54 (D. Mass. 1997) ........................................................... 7

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)....................................................................... 18

*Evans v. Akers*,
    534 F.3d 65 (1st Cir. 2008) ........................................................... 10, 12

*Garcia v. E.J. Amusements of New Hampshire, Inc.*,
    98 F.Supp.3d 277 (D. Mass. 2015) ....................................................... 8

*Garcia-Rubiera v. Calderon*,
    570 F.3d 443 (1st Cir. 2009) ............................................................. 7

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147, 102 S. Ct. , 72 L. Ed. 2d 740 (1982).................................... 4

*Glass Dimensions, Inc. v. State St. Bank & Tr. Co.*,
    285 F.R.D. 169 (D. Mass. 2012) ...................................................................8, 11, 14

*Hochstadt v. Boston Scientific Corp.*,
    708 F.Supp.2d 95 (D. Mass. 2010) ................................................................. *passim*

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
    216 F.R.D. 197 (D. Me. 2003) ................................................................................ 15

*In re Credit Suisse–AOL Sec. Litig.*,
    253 F.R.D. 17 (D. Mass. 2008) ..........................................................................10, 11

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*,
    275 F.R.D. 382 (D. Mass. 2011) ............................................................................. 9

*In re Lupron Mktg. and Sales Prac. Litig.*,
    345 F.Supp.2d 135 (D. Mass. 2004) ...................................................................... 17

*In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*,
    270 F.R.D. 45 (D. Mass. 2010) .............................................................................. 16

*In re Nexium (Esomeprazole) Antitrust Litig.*,
    296 F.R.D. 47 (D. Mass. 2013) ................................................................................ 8

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    588 F.3d 24 (1st Cir. 2009) ................................................................................. 6, 14

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. 2005) ................................................................... 14, 15, 16

*In re Schering Plough Corp. ERISA Litig.*,
    589 F.3d 585 (3d Cir. 2009) ................................................................................... 12

*Lapan v. Dick's Sporting Goods, Inc.*,
    2015 WL 8664204 (D. Mass. Dec. 11, 2015) ......................................................... 5

*Mass. Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985)..............................................................................................11

*McLaughlin v. Liberty Mut. Ins. Co.*,
    224 F.R.D. 304 (D. Mass. 2004) .............................................................................. 7

*Moreno v. Deutsche Bank Americas Holding Corp.*,
    2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017) .......................................................... 9

*Mullane v. Central Hanover Bank and Trust Co.*,
    339 U.S. 306 (1950).............................................................................................. 18

*New England Biolabs, Inc. v. Miller*,
  2022 WL 20583575 (D. Mass. Oct. 26, 2022) ........................................................................ 5

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) .................................................................................................................. 13

*Rolland v. Cellucci*,
  191 F.R.D. 3 (D. Mass. 2000) ........................................................................................... 15, 17

*Schlusselberg v. Colonial Mgmt. Assoc., Inc.*,
  389 F.Supp. 733 (D. Mass. 1974) ........................................................................................... 15

*Sesto v. Prospect CharterCARE, LLC*,
  2019 WL 2394251 (D.R.I. June 6, 2019) ................................................................................. 5

*Surowitz v. Hilton Hotels Corp.*,
  383 U.S. 363 (1966) .................................................................................................................. 11

*United States v. Massachusetts*,
  869 F.Supp.2d 189 (D. Mass. 2012) ........................................................................................ 5

*Voss v. Rolland*,
  592 F.3d  (1st Cir. 2010) ............................................................................................................ 5

*Waldner v. Natixis Inv. Managers, L.P.*,
  2023 WL 3466272 (D. Mass. Mar. 24, 2023), *R. & R. adopted*, 2023 WL 3467112
  (D. Mass. May 15, 2023) ..................................................................................................... 9, 12

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .................................................................................................................... 8

**Statutes**

28 U.S.C § 1292(b) ........................................................................................................................... 3

29 U.S.C. § 1001 .............................................................................................................................. 1

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................. 4, 5, 7, 13

Fed. R. Civ. P. 23(a) ................................................................................................................ *passim*

Fed. R. Civ. P. 23(a)(1) .................................................................................................................... 7

Fed. R. Civ. P. 23(a)(2) .................................................................................................................... 8

Fed. R. Civ. P. 23(a)(3) .................................................................................................................. 10

Fed. R. Civ. P. 23(a)(4) ................................................................................................... 10

Fed. R. Civ. P. 23(b) .................................................................................................... 5, 12

Fed. R. Civ. P. 23(b)(1) ............................................................................................... 6, 12

Fed. R. Civ. P. 23(b)(1)(B) ........................................................................................ 12, 13

Fed. R. Civ. P. 23(e) ................................................................................................... 18, 19

Fed. R. Civ. P. 23(e)(2) .................................................................................................... 5

Fed. R. Civ. P. 23(g) ...................................................................................................... 13

Fed. R. Civ. P. 23(g)(1)(A) ............................................................................................ 13

Plaintiffs, Adilson Monteiro, Karen Ginsburg, Jason Lutan and Brian Minsk (collectively, "Plaintiffs"), on behalf of the proposed Settlement Class[1] and the Children's Hospital Corporation Tax-Deferred Annuity Plan (the "Plan"), respectfully submit this Memorandum of Law in Support of their Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Motion"), requesting the Court issue an Order that: (1) preliminarily approves the Settlement Agreement dated April 18, 2025 between Plaintiffs and Defendants, Children's Hospital Corporation, the Board of Directors of the Children's Hospital Corporation, and the Children's Hospital Corporation Retirement Committee, (collectively, "Defendants"), (2) preliminarily certifies the proposed Settlement Class; (3) preliminarily approves the proposed notice plan ("Notice Plan") in the Settlement Agreement and proposed Preliminary Approval Order; and (4) sets a final approval hearing on a date convenient for the Court at least 140 days after the entry of an order preliminary approving the proposed settlement (the "Settlement").[2]

## I.    INTRODUCTION

The Parties have agreed to the Settlement in this representative action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, for total relief of $3,000,000.00 as well as certain relief related to the administration of the Settlement, which will provide a fair recovery to Class Members. Considering the favorable relief the Settlement provides, as well as the inherent risks and delays of continued litigation, Plaintiffs and Class Counsel submit that the Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class.

---

[1] Capitalized terms not otherwise defined herein have the same meaning as in the Settlement Agreement filed herewith.

[2] A proposed Preliminary Approval Order is attached as Exhibit C to the Settlement Agreement.

Plaintiffs and Class Counsel vigorously pursued relief on behalf of the Plan, and Defense Counsel vigorously defended against the allegations in the Complaint. The Parties agreed to the Settlement after meaningful motion practice, written discovery, and arm's-length negotiations by experienced counsel, including a private mediation with an experienced neutral mediator. Resolving the Class Action at this juncture allows the Parties to avoid continued and costly litigation, which could result in recovery less than that provided by the Settlement, or no recovery at all.  As part of the settlement approval process, an Independent Fiduciary will be engaged on behalf of the Plan to review and authorize the Settlement, and the Independent Fiduciary's authorization of the Settlement and the Plan's release of claims will be submitted in a written opinion filed in advance of the fairness hearing.  The anticipated Independent Fiduciary report will be based on all matters of record, the Parties' mediation submissions and expert analyses (if requested), as well as separate interviews with Plaintiffs' and Defendants' counsel. The Independent Fiduciary report will offer the Court an independent basis to judge the fairness of the Settlement.

All the prerequisites for preliminary approval of the Settlement and certification of the Settlement Class are satisfied.  Thus, Plaintiffs respectfully submit that the Motion should be granted, and notice should be provided to the Settlement Class.

## II.    BACKGROUND

In this ERISA action, Plaintiffs allege that Defendants breached fiduciary duties they owe to the Plan by failing to appropriately monitor the Plan's investments and fees and, consequently, retaining unsuitable investments in the Plan and causing the Plan to pay excessive recordkeeping fees.  *See* Class Action Complaint ("Complaint" ECF No. 1) ¶¶ 21–85.  Plaintiffs filed the Complaint on January 18, 2022, and Defendants moved to dismiss the Complaint on April 7,

2022 (ECF Nos. 27).   After full briefing, including multiple supplemental submissions, the Court denied Defendants' motion to dismiss on March 15, 2023 (ECF No. 56).   Defendants filed a motion to certify an interlocutory appeal of the Court's order on the motion to dismiss pursuant to 28 U.S.C § 1292(b) (ECF No. 59), which the Court denied (ECF No.66).   The Parties engaged in comprehensive discovery, including the exchange and review of tens of thousands of pages of documents and identification of witnesses for deposition.   *See* Declaration of Alec J. Berin ("Berin Decl.") ¶ 7.   Plaintiffs had also served subpoenas for documents and testimony on third parties.   *See id*.   On October 9, 2024, the Parties moved to stay proceedings pending a private mediation with Robert A. Meyer, Esquire of JAMS, a well-respected, neutral mediator with experience mediating claims of the kind at issue in this action.   The Parties reached a settlement in principle on February 11, 2025.   The Parties submitted a Joint Status Report on February 14, 2025, notifying the Court of this update and requesting that the Court stay proceedings until April 18, 2025, which request the court granted that same day (ECF No. 91–92).

The Settlement provides that Defendants will pay $3,000,000.00 into a Qualified Settlement Fund, to be allocated to participants and beneficiaries in the Plan pursuant to the proposed Plan of Allocation, in exchange for dismissal of the Class Action and a release of claims.   *See* Settlement Agreement §§1.38, 4.4–4.5, 5.3, 7.1–7.2., Ex. B.   The Settlement Agreement and proposed notices describe Plaintiffs' anticipated requests for payment of attorneys' fees and litigation expenses to Class Counsel and for case contribution awards to the Class Representatives, all of which are subject to the Court's approval.   *See* Settlement Agreement, §§ 1.4, 1.9, 2.2.6, 6.1, Ex. A.   Furthermore, as discussed above, the Settlement Agreement provides for approval of the Settlement by an Independent Fiduciary.   *See* Settlement Agreement, §§ 1.27, 2.1.

The Parties respectfully request that the Court schedule a Fairness Hearing, at or after which the Court will be asked to determine whether the Settlement is fair, reasonable, and adequate, and merits final approval.  Plaintiffs propose the following schedule:

| Event | Reference to Preliminary Approval Order | Proposed Deadline |
|---|---|---|
| Preliminary approval hearing | | If the Court deems necessary, on a date convenient for the Court within 45 days of the Preliminary Approval filing |
| Settlement Administrator to set up settlement website and toll-free number | ¶ 8 | Within 30 days of entry of Preliminary Approval Order |
| Send Settlement Notice to Class Members | ¶ 8 | Within 30 days of entry of Preliminary Approval Order |
| Final Approval papers and fee request | ¶¶ 9, 10 | 45 days before Fairness Hearing |
| Independent Fiduciary Report | Settlement Agreement ¶ 2.1.2 | Not later than 30 days before the Fairness Hearing |
| Deadline for filing of objections | ¶ 11 | Not later than 30 days before the Fairness Hearing |
| Deadline for Parties to respond to objections or file any additional papers in support of Settlement | ¶ 11 | Prior to Fairness Hearing |
| Fairness Hearing | ¶ 6 | On a date convenient for the Court no sooner than 140 days after entry of the Preliminary Approval Order |

## III.    STANDARD OF REVIEW

When the Court is presented with a proposed settlement in a class action, it must determine whether the proposed settlement class satisfies the requirements for class certification under Federal Rule of Civil Procedure 23.  *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 236, 72 L. Ed. 2d 740 (1982); *see also Hochstadt v. Boston Scientific Corp.*, 708 F.Supp.2d 95, 102 (D. Mass. 2010) (finding that despite the "cautionary approach" to class certification, "the law favors class action settlements").  Specifically, a proposed class must meet

the four requirements of Rule 23(a) and the requirements of at least one subsection of Rule

23(b).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997); FED. R. CIV. P. 23.

The Court must also find that a proposed settlement warrants preliminary approval.  In

evaluating whether preliminary approval should be granted, courts are guided by the Rule

23(e)(2) fairness inquiry, which evaluates the "(1) complexity, expense, and likely duration of

litigation, (2) reaction of class to settlement, (3) stage of proceedings and amount of discovery

completed, (4) risks of establishing liability, (5) risks of establishing damages, (6) risks of

maintaining class action through trial, (7) ability of defendants to withstand greater judgment, (8)

range of reasonableness of settlement fund in light of best possible recovery, and (9) range of

reasonableness of settlement fund to a possible recovery in light of all the attendant risks of

litigation."  *Bezdek v. Vibram USA Inc.*, 79 F.Supp.3d 324, 343–44 (D. Mass. 2015), *aff'd*, 809

F.3d 78 (1st Cir. 2015).  Before approving a proposed settlement agreement, the Court must

determine if the settlement is "fair, reasonable, and adequate; and not illegal, a product of

collusion, or against the public interest."  *United States v. Massachusetts*, 869 F.Supp.2d 189 (D.

Mass. 2012) (citing *Voss v. Rolland*, 592 F.3d 342, 251 (1st Cir. 2010)) (approving class action

settlement because it was fair, reasonable, and adequate).  Courts within the First Circuit

approach that analysis with the understanding that the law favors settlement, particularly in class

actions and other complex cases where substantial judicial and litigant resources can be

conserved by avoiding formal litigation.  *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d

1041, 1043 (1st Cir. 1996).  This "first step is merely to ascertain whether notice of the proposed

settlement should be sent to the class."  *New England Biolabs, Inc. v. Miller*, 2022 WL

20583575, at *2 (D. Mass. Oct. 26, 2022) (quoting *Sesto v. Prospect CharterCARE, LLC*, 2019

WL 2394251, at *1 (D.R.I. June 6, 2019)) (internal quotation marks omitted); *see also Lapan v.*

*Dick's Sporting Goods, Inc*., 2015 WL 8664204, at *1 (D. Mass. Dec. 11, 2015) (granting preliminary approval of a proposed settlement "within the range of possible settlement approval, such that notice to the Class is appropriate.").  Indeed, the threshold requirement to survive the preliminary review stage is merely that the settlement is within the range of reasonableness "[w]hen sufficient discovery has been provided and the parties have bargained at arms-length." *City P'ship Co*., 100 F.3d at 1043; *see also In re Pharm. Indus. Average Wholesale Price* [("*AWP*")] *Litig*., 588 F.3d 24, 32–33 (1st Cir. 2009).

## IV.    ARGUMENT

### A.    Certification of the Settlement Class is Appropriate

Although ERISA representative actions are well suited for class action treatment, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."  *Hochstadt*, 708 F.Supp.2d at 102 (quoting *Amchem*, 521 U.S. at 620).  Even setting aside the less stringent inquiry relevant here, in recognition of the inherently representative nature of the claims asserted on behalf of the Plan, courts in this District have recognized that ERISA § 502(a)(2) claims are precisely the type encompassed by Rule 23(b)(1).  *See id*. at 105 (recognizing ERISA § 502(a)(2) actions are "paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held.") (collecting cases); *see also Clark v. Beth Israel Deaconess Med. Ctr*., No. 22-10068-DPW, ECF No. 61, (D. Mass. May 5, 2023) (preliminarily certifying a settlement class in an ERISA class action alleging analogous investment monitoring claims).  Since this action satisfies each of the prerequisites of Rule 23(a) and is suitable for certification under Rule 23(b)(1), the Court should preliminarily certify the Settlement Class.

1.      **The Settlement Class Satisfies Rule 23(a)**

The requirements of Rule 23(a) are commonly referred to as numerosity, commonality, typicality, and adequacy of representation.  *See Amchem*, 521 U.S. at 613.  Plaintiffs and the proposed Class satisfy each of the Rule 23(a) prerequisites.

i.      **Numerosity**

The numerosity requirement of Rule 23 requires that a putative class must be "so numerous that joinder of all members is impracticable."  FED. R. CIV. P. 23(a)(1).  "While this requirement 'is often referred to as 'numerosity,'. . . it might more properly be called the 'impracticability' requirement, because this inquiry called for by Rule 23(a)(1) often involves more than merely counting noses.'"  *DeRosa v. Massachusetts Bay Commuter Rail Co.*, 694 F.Supp.2d 87, 97 (D. Mass. 2010) (citing *McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 307 (D. Mass. 2004)).  In conducting the impracticability inquiry, the court must consider the difficulty of joining the parties and ask whether "the damage claims of most individual class members would be relatively small compared to the cost of litigation, leaving individual class members with little incentive to litigate their own claims."  *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 65 (D. Mass. 1997).  While no "minimum number of plaintiffs is required to maintain a suit as a class action, [] generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  *DeRosa*, 694 F.Supp.2d at 97; *see also Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009).

The Plan had over 20,000 participants and beneficiaries at all times during the Class Period, and the members of the Settlement Class are geographically dispersed. Membership in the Settlement Class is ascertainable from the records of the Plan maintained by Defendants and

the Plan's recordkeeper. *See* Berin Decl., at 4. Accordingly, considering the size and dispersion

of the Settlement Class, which is greater than other classes certified in this Circuit, the proposed

Class easily meets Rule 23(a)'s numerosity requirement. Indeed, joinder would be "difficult,

inconvenient, and costly." *In re Nexium (Esomeprazole) Antitrust Litig.*, 296 F.R.D. 47 (D.

Mass. 2013) (certifying a class of 24 to 29 members); *see also Hochstadt*, 708 F.Supp.2d at 102

(certifying settlement class of over 10,000 retirement plan participants and beneficiaries in

ERISA breach of fiduciary duty action).

### ii.    Commonality

The commonality factor requires "questions of law or fact common to the class," FED. R.

CIV. P. 23(a)(2), and a "common contention" that is "capable of classwide resolution—which

means that determination of its truth or falsity will resolve an issue that is central to the validity

of each one of the claims in one stroke." *Garcia v. E.J. Amusements of New Hampshire, Inc.*, 98

F.Supp.3d 277, 285 (D. Mass. 2015) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338

(2011)). Commonality is a low hurdle, and "requires only that resolution of the common

questions affect all or a substantial number of the class members." *Bezdek,* 79 F.Supp.3d at 337.

Indeed, "[a]s long as a sufficient constellation of common issues binds class members together,

notwithstanding the existence of some individualized issues, a class may still be certified."

*Glass Dimensions, Inc. v. State St. Bank & Tr. Co.*, 285 F.R.D. 169 (D. Mass. 2012) (internal

quotations omitted). "The threshold of commonality is not a difficult one to meet." *Hochstadt*,

708 F.Supp.2d at 102.

Courts in this District have found commonality satisfied for ERISA breach of fiduciary

duty claims brought, as here, on behalf of a plan, because the legal claims are "the same with

respect to every class member." *Hochstadt*, 708 F.Supp.2d at 102–04, 106. Plaintiffs allege

Defendants breached fiduciary duties they owed to the Plan under ERISA § 404 and bring this action in a representative capacity under ERISA §§ 409 and 502(a)(2).  Thus, Plaintiffs' Plan-wide claims involve legal and factual questions that inherently affect all participants and beneficiaries in the Plan.  Indeed, "[b]ecause the fiduciary duties are owed to the [Plan] . . . common questions of law and fact are central to the case."  *Cunningham v. Cornell Univ.*, 2019 WL 275827, at *5 (S.D.N.Y. Jan. 22, 2019).

While a single common question is sufficient to meet this standard, Plaintiffs assert the common questions here are numerous and include: (i) whether Defendants are fiduciaries of the Plan; (ii) whether Defendants breached their fiduciary duties by failing to appropriately monitor the Plan's investments and fees; (iii) whether Defendants caused the Plan to retain unsuitable investments and pay excessive fees; (iv) whether the Plan suffered resulting losses; (v) the proper manner in which to calculate the Plan's losses; and (vi) what equitable relief, if any, is appropriate in light of these alleged breaches.  *See Hochstadt,* 708 F.Supp.2d at 102–03 (finding similar questions sufficient to satisfy commonality in an ERISA action).  As these critical issues involve the acts and omissions of Defendants, they are "common questions of law or fact in the case."  *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D. 382, 388–389 (D. Mass. 2011).  In Plaintiffs' view, the evidence required to answer these contentions exists at the Plan-level and, consequently, is common to all Plan participants.  Answers do not depend on the particular circumstances of any individual participant because, in ERISA fiduciary breach actions, "liability is determined based on Defendants', not Plaintiff['s], decisions."  *Moreno v. Deutsche Bank Americas Holding Corp.*, 2017 WL 3868803, at *5 (S.D.N.Y. Sept. 5, 2017); *see also Waldner v. Natixis Inv. Managers, L.P.*, 2023 WL 3466272 (D. Mass. Mar. 24, 2023), *R. & R. adopted*, 2023 WL 3467112 (D. Mass. May 15, 2023).  Simply put, Plaintiffs contend that the

central allegations in this action concern Defendants' administration of the Plan, and because Defendants' duties ran to the Plan, common questions pervade the Action.

### iii.    Typicality

The typicality prerequisite ensures that representative plaintiffs' claims are typical of those of the class.  FED. R. CIV. P. 23(a)(3).  The inquiry requires that "the claims of the class representative and the class overall must share essential characteristics, but they need not be precisely identical."  *Bezdek*, 79 F.Supp.3d at 338.  This District has held that a plaintiff's claims are typical when the plaintiff's "injuries arise from the same events or course of conduct as do the injuries of the class and when plaintiff's claims and those of the class are based on the same legal theory."  *In re Credit Suisse–AOL Sec. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008).

Courts routinely find claims asserting breaches of fiduciary duty related to the selection and monitoring of retirement plan investments to be typical of all participants in a plan at issue.  *See Hochstadt*, 708 F.Supp.2d at 103.  Further, Plaintiffs bring this action in a representative capacity on behalf of the Plan, and any recovery will go to the Plan.  *See Bowers v. Russell*, 2025 WL 342077 (D. Mass. Jan. 30, 2025) (citing *Evans v. Akers*, 534 F.3d 65, 70 n.4 (1st Cir. 2008)) ("those who bring suit do so on behalf of the plan and the plan takes legal title to any recovery").  Since Plaintiffs allege fiduciary breaches arising out of Defendants' management and administration of the Plan, Plaintiffs' claims are clearly typical of all Class Members.

### iv.    Adequacy

Representative plaintiffs must also show that they will "fairly and adequately protect the interests of this class."  FED. R. CIV. P. 23(a)(4).  This inquiry has two components: "First, there must be an absence of potential conflict between the named plaintiff and the potential class members, and second, the counsel chosen by the class representative must be qualified,

experienced, and able to vigorously conduct the proposed litigation." *Glass Dimensions*, 285

F.R.D. at 179 (internal quotations omitted).  The First Circuit has noted that the first component

ensures that the will of named plaintiffs does not "conflict with the interests of any of the class

members," and the second ensures class counsel are "qualified, experienced and able to

vigorously conduct the proposed litigation." *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130

(1st Cir. 1985); *see also In re Credit Suisse*, 253 F.R.D. at 22 (noting that "[t]he requirements of

typicality and adequacy tend to merge").

> Plaintiffs' interests are tightly aligned with all other members of the Settlement Class by

virtue of the representative nature of Plaintiffs' claims on behalf of the Plan.  Plaintiffs seek to

enforce the duties Defendants owed to the Plan and to recover damages and equitable relief.  *See*

*Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985).  Since Plaintiffs are pursuing

claims on behalf of the Plan, there are no conflicts between Plaintiffs' individual interests and the

interests of the Class.  *See Andrews*, 780 F.2d at 130 (finding the adequacy requirement satisfied

when "the interests of the representative party will not conflict with the interests of any of the

class members").  Indeed, Plaintiffs and Class Members all share the same objectives, factual and

legal positions, and interest in establishing Defendants' liability.  Moreover, in order to effectuate

the Settlement, Plaintiffs are proposing a Plan of Allocation that provides for *pro rata*

distribution of the common fund to members of the Settlement Class based on their account

balances in the Plans.  The proposed Plan of Allocation safeguards against the potential of

intraclass conflicts (though none exist here).  *See Hochstadt*, 708 F.Supp.2d at 104.

> Finally, a class representative need only possess a basic understanding of the facts

underlying the claims in the action and an ability and willingness to participate in the litigation,

requirements that Plaintiffs easily exceed.  *See Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363,

373 (1966).  Plaintiffs have demonstrated their commitment to pursuing this action on behalf of

the Settlement Class and have achieved a very favorable result, which does not favor any

member of the Settlement Class at the expense of others.  *See* Berin Decl. ¶ 3.  Plaintiffs actively

participated in the investigation of their claims, responded to discovery requests and sat for

depositions, and were involved in the mediation process.  *See id.*  Clearly, Plaintiffs adequately

represent all members of the Settlement Class.  In addition, Plaintiffs have retained qualified and

competent counsel, whose adequacy is discussed in greater detail below.  *See Hochstadt*, 708

F.Supp.2d at 107 (finding class counsel with experience prosecuting ERISA actions over the last

four years to be adequate).

### 2.    The Settlement Class Satisfies Rule 23(b)(1)

In addition to Rule 23(a), Plaintiffs need only satisfy one subsection of Rule 23(b).  *See*

*Amchem*, 521 U.S. at 613–14.  Courts routinely grant certification under Rule 23(b)(1) in ERISA

breach of fiduciary duty cases.  *See, e.g.*, *Hochstadt*, 708 F.Supp.2d at 107 ("breach of fiduciary

duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for

certification as a Rule 23(b)(1) class, as numerous courts have held.") (citing *In re Schering*

*Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009)).  Since ERISA actions authorize

plan-wide relief, there is risk that failure to certify the class would leave future plaintiffs without

relief.  *See Hochstadt*, 708 F.Supp.2d 95, at 105 (collecting cases); *Waldner*, 2023 WL 3466272,

at *18 (citing *Evans v. Akers*, No. 04–11380–WGY, slip op. at 4 (D. Mass. Oct. 7, 2009))

(finding class certification appropriate under Rule 23(b)(1)(B) because "[g]iven the Plan-

representative nature of Named Plaintiffs' breach of fiduciary duty claims, there is a risk that

failure to certify the Settlement Class would leave future plaintiffs without relief.").  Individual

adjudication risks contradictory outcomes, and "defendant-fiduciaries are entitled to consistent

rulings regarding operation of the plan." *Evans*, No. 04-11380-WGY, slip op. at 4 (D. Mass. Oct. 7, 2009). This reasoning is rooted in the basic concepts of trust law, as a suit alleging a breach of trust by a fiduciary affecting a large class of beneficiaries and requiring an accounting or similar procedure to restore the subject of the trust is a classic example of a Rule 23(b)(1)(B) action. FED. R. CIV. P. 23 Adv. Comm. Note to 1966 amendment; *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833–34 (1999) (describing breach of trust actions as a "classic example" of a Rule 23(b)(1) class). Plaintiffs' claims on behalf of the Plan satisfy Rule 23(b)(1).

### 3.    Class Counsel should be Appointed as Counsel for the Settlement Class

In appointing Class Counsel, this Court should consider the Rule 23(g) factors:

> (i) the work counsel has done in identifying or investigating potential claims in this action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.

FED. R. CIV. P. 23(g)(1)(A). Proposed Class Counsel, Miller Shah LLP ("Miller Shah") and Capozzi Adler, P.C. ("Capozzi Adler"), are exceedingly qualified under these factors. *See* Berin Decl. ¶¶ 5, 6. Class Counsel have leveraged their experience and resources to vigorously pursue recovery on behalf of the Plan and protect the interests of all Class Members, including by comprehensively investigating the claims forming the basis of the Action, filing detailed pleadings, briefing the motion to dismiss, and reviewing meaningful document productions. *Id*. ¶¶ 5, 7, 9. Class Counsel also have extensive experience litigating and overseeing the administration of settlements in ERISA fiduciary breach actions. *See id.* ¶ 5; *see also Clark*, No. 22-10068-DPW, ECF No. 61 at 3 (appointing Miller Shah and Capozzi Adler as class counsel in connection with an ERISA fiduciary breach class action settlement based on finding that the firms are experienced and qualified to represent the class); *Hochstadt,* 708 F.Supp.2d at 107

13

(appointing class counsel experienced with ERISA actions); *Glass Dimensions*, 285 F.R.D. at

179 (explaining that class counsel must be "qualified, experienced, and able to vigorously

conduct the proposed litigation.").  Class Counsel will continue to leverage their experience and

resources on behalf of the Settlement Class through final resolution.  The Court should appoint

Miller Shah and Capozzi Adler as Class Counsel.[3]

### B.    The Settlement, Notice Plan, and Plan of Allocation Warrant Preliminary Approval

The first step in approving any proposed class action settlement is preliminary approval.

*See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 58 (D. Mass. 2005).  At this stage, the Court

reviews the proposed settlement to determine whether it is within the "range of reasonableness,"

*id.*, and whether, taken as a whole, it is "fair, adequate and reasonable."  *City P'ship*, 100, F.3d at

1043.  The analysis begins with the premise that there is generally a presumption in favor of the

settlement if the parties negotiated at arm's-length and were sufficiently informed about the

strengths of the claims and defenses and risks of continued litigation.  *See Hochstadt*, 708

F.Supp.2d at 107 (citing *In re Pharm. Indus. AWP Litig.*, 588 F.3d at 32–33); *see also City P'ship

Co.*, 100 F.3d at 1043 ("the law favors class action settlements").

### 1.    The Settlement Should be Preliminary Approved

The First Circuit has enumerated various factors to consider in the preliminary approval

analysis: "Specifically, the appellate courts consider some or all of the following factors: (1)

comparison of the proposed settlement with the likely result of litigation; (2) reaction of the class

to the settlement; (3) stage of the litigation and the amount of discovery completed; (4) quality of

---

[3]Bailey & Glasser, LLP, which also has significant experience in ERISA class actions and has been serving Plaintiffs and the Plan in a local counsel capacity since the inception of the action, should be appointed local counsel for the Settlement Class.

counsel; (5) conduct of the negotiations; and (6) prospects of the case, including risk, complexity, expense and duration." *In re Relafen*, 231 F.R.D. at 72 (citing *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003)). The most important factor is the "likelihood of success," or "the strength of the case for the plaintiffs on the merits, balanced against the amount offered in settlement." *Schlusselberg v. Colonial Mgmt. Assoc., Inc.*, 389 F.Supp. 733, 735 (D. Mass. 1974). Courts are mindful that settlements are born of compromise. *See Rolland v. Cellucci*, 191 F.R.D. 3, 15 (D. Mass. 2000).

In evaluating the first factor, the Court should also weigh the considerations listed in the sixth factor: the potential "risk, complexity, expense and duration" of the litigation. *In re Relafen*, 231 F.R.D. at 72. At the time the Parties agreed to the Settlement, they were engaged in vigorous litigation and further litigation promised to be lengthy and complex, involving numerous competing experts on liability issues concerning Plaintiffs' claims and Defendants' defenses, as well as the Plan's alleged losses. The Parties likely would have filed dispositive motions and pretrial motions, including motions concerning the anticipated expert testimony. Thus, Plaintiffs faced meaningful challenges to their ability to obtain a recovery on behalf of the Plan, which strongly supports preliminary approval of the Settlement. *See Rolland*, 191 F.R.D. at 9 (approving a settlement when it was "doubtful that Plaintiffs could have obtained relief at trial in the comprehensive and detailed manner . . . [of the] the Settlement Agreement."). Plaintiffs and Class Counsel have achieved a fair Settlement. *See id.* at 10 ("When comparing the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation, there are clearly strong arguments for approving a settlement.") (internal quotations and citation omitted).

The second factor in the preliminary approval inquiry is opposition to the settlement, but since the Parties have not yet sent the notice, "the only practical way to ascertain the overall level of objection to the proposed settlement is for notice to go forward, and to see how many potential class members choose to . . . object to its terms at the Final Fairness Hearing." *In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 63 (D. Mass. 2010). The Court will have the opportunity to more comprehensively review the Settlement Class's reception to the Settlement at the Fairness Hearing. Moreover, the report of the Independent Fiduciary will provide an additional touchstone for the Court's review of this factor at the final approval stage.

The third factor courts in this Circuit consider is the "stage of the litigation and the amount of discovery completed." *In re Relafen*, 231 F.R.D. at 73. This proposed Settlement Agreement comes after the parties engaged in substantial motion practice to test the viability of the Complaint, exchanged voluminous written discovery and began coordinating third party discovery and depositions, and made meaningful mediation submissions, all of which allowed them to comprehensively evaluate the strengths and weaknesses of the action. *See* Berin Decl., at 3. Indeed, Class Counsel has extensively developed Plaintiffs' claims on behalf of the Plan and Settlement Class. *See Hochstadt*, 708 F.Supp.2d at 107 (explaining that "the applicable standard" asks "whether the parties conducted sufficient discovery to make an intelligent judgment about settlement.").

Class Counsel conducted substantial investigation and analysis of Plaintiffs' claims, commencing even before the filing of the initial pleading, and, throughout the course of the litigation and settlement efforts, reviewed and analyzed documents pertaining to the Plans' administration and Defendants' fiduciary process, including *inter alia* chartering documents of the fiduciary committee, meeting minutes, materials provided to the committee to support its

decision-making, disclosures by service providers, and disclosures made to participants in the Plans. *See* Berin Decl. ¶¶ 7, 10. Plaintiffs identified and served discovery on relevant third parties who were involved in the management and administration of the Plan. *See id.* The Parties also exchanged confidential information related to the claims and defenses at issue in the action, and the Plan's alleged losses, in connection with the mediations. *See id.* Given this information, it is Class Counsel's opinion that the Settlement is fair, reasonable, and adequate to the Settlement Class. *See id.*; *see also Hochstadt*, 708 F.Supp.2d at 108 (granting preliminary approval to settle a case "at a stage where both the court and counsel are able to evaluate the merits of the claims."). Class Counsel have significant experience litigating ERISA breach of fiduciary duty actions, and the materials produced by Defendants enabled Class Counsel to meaningfully evaluate the merits of Plaintiffs' claims and assess the risks of continued litigation.

Finally, for the fourth and fifth factors (the opinion of competent counsel and the conduct of negotiations), Courts consider class counsel's background and whether the settlement is the result of "negotiation that occurred at arm[']s[-]length." *In re Lupron Mktg. and Sales Prac. Litig.*, 345 F.Supp.2d 135, 137 (D. Mass. 2004). The Settlement is the product of an extensive arm's-length process involving an experienced neutral mediator. Berin Decl. ¶ 8. Furthermore, Class Counsel and Defendants' counsel are experienced in complex ERISA litigation, thoroughly understand the factual and legal issues involved in the Class Action, and believe the Settlement is fair and reasonable. *Id.* ¶ 5. Therefore, the fourth and fifth factors weigh in favor of Settlement approval. *See Rolland*, 191 F.R.D. at 10 (citing *Bussie v. Allmerica Fin. Corp.*, 50 F.Supp.2d 59, 72 (D. Mass. 1999) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which

is fair, reasonable and adequate should be given significant weight."); *Hochstadt*, 708 F.Supp.2d

at 107 (granting preliminary approval based on finding of arm's-length negotiations).

The Settlement is the product of vigorous litigation and arm's-length negotiation by

experienced and well-informed counsel, and it provides significant relief to the Settlement Class.

The Court should find the Settlement is fair, reasonable, and adequate, and warrants approval.

### 2.    The Notice Plan Should be Preliminarily Approved

The Court should approve the proposed Notice Plan.  Due process and Rule 23(e) do not

require that each Class Member receive notice, but rather that class notice be "reasonably

calculated . . . to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections."  *Mullane v. Central Hanover Bank and Trust Co*., 339

U.S. 306, 314 (1950).  "Individual notice must be provided to those class members who are

identifiable through reasonable effort."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974).

The Notice Plan is designed to reach as many Settlement Class members as possible. The

Settlement Notice will be sent by e-mail and/or first-class mail to the last known address of each

Settlement Class member prior to the Fairness Hearing.  All Class Members have or had Plan

accounts, so the Plan's recordkeeper has their addresses and other identifying information.

Additionally, the Notice, Settlement Agreement, and other litigation documents will be posted on

a website, and the Settlement Administrator will establish and monitor a toll-free number for

Class Member inquiries.  The Notice will also provide Class Counsels' contact information.

Finally, the Notice Plan clearly describes: (i) the terms and operation of the Settlement; (ii) the

nature and extent of the Released Claims; (iii) the attorneys' fees, litigation expenses, and case

contribution award that may be sought; (iv) the procedure and timing for objections; and (v)

subject to the Court's schedule, the date and location of the Fairness Hearing.  *See Hochstadt*,

708 F.Supp.2d at 110 (finding a proposed notice providing "background information on the ERISA [a]ction[], accurately recit[ing] the legal rights and options of the Settlement Class and fully explain[ing] the Revised Plan of Allocation" to be appropriate). The Notice Plan clearly describes: (i) the terms and operation of the Settlement; (ii) the nature and extent of the Released Claims; (iii) the maximum attorneys' fees, litigation expenses, and case contribution award that may be sought; (iv) the procedure and timing for objections; and (v) the date and location of the Fairness Hearing. Thus, the Notice Plan satisfies all due process considerations and meets the requirements of Rule 23(e).

### 3.    The Plan of Allocation Should be Preliminarily Approved

The Plan of Allocation provides recovery to members of the Settlement Class on a *pro rata* basis, with no preferential treatment for Plaintiffs or any segment of the Settlement Class. This is substantially similar to plans approved by courts in analogous ERISA litigation. *See, e.g.*, *In re Biogen, Inc. ERISA Litig.*, No: 1:20-cv-11325-DJC, ECF No. 117 (D. Mass. Aug. 31, 2023) (finding settlement and plan of allocation warranted distribution of notice at preliminary approval stage); *Clark,* No. 22-10068-DPW, ECF No. 61 (D. Mass.); *Barcenas v. Rush Univ. Med. Ctr.*, No. 1:22-cv-00366, ECF No. 73 (N.D. Ill. Jan. 19, 2023); *Blackmon v. Zachary Holdings, Inc.*, No. 5:20-cv-00988-ESC, ECF No. 83 (W.D. Tex. Aug. 5, 2022); *Jones v. Coca-Cola Consolidated Inc.*, No. 3:20-cv-00654-FDWDSC, ECF No. 98 (W.D.N.C. Aug. 2, 2022); *Terraza v. Safeway Inc.*, No. 16-cv-03994-JST, ECF No. 268 (N.D. Cal. Sept. 8, 2020). The Plan of Allocation is consistent with ERISA's obligation to treat plan participants alike, and obviates any potential intraclass conflicts. In addition, members of the Settlement Class with active accounts in the Plan will receive distributions of settlement proceeds to which they are entitled

automatically in their Plan accounts.  At bottom, the Plan of allocation treats Settlement Class members equitably and should be found to be fair, reasonable, and adequate.

## V.    CONCLUSION

Plaintiffs respectfully submit the Motion should be granted in its entirety.

Dated: April 28, 2025

Respectfully submitted,

/s/ *Alec J. Berin*
James C. Shah
Alec J. Berin
MILLER SHAH LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Tel: (866) 540-5505
Fax: (866) 300-7367
jcshah@millershah.com
ajberin@millershah.com

James E. Miller
Laurie Rubinow
MILLER SHAH LLP
65 Main Street
Chester, CT 06412
Tel: (866) 540-5505
Fax: (866) 300-7367
jemiller@millershah.com
lrubinow@millershah.com

Mark K. Gyandoh
CAPOZZI ADLER, P.C.
312 Old Lancaster Road
Merion Station, PA 19066
Tel: (610) 890-0200
Fax: (717) 233-4103
markg@capozziadler.com

Donald R. Reavey
CAPOZZI ADLER, P.C.
2933 North Front Street
Harrisburg, PA 17110
Tel: (717) 233-4101
Fax: (717) 233-4103
donr@capozziadler.com

John Roddy
BAILEY & GLASSER LLP
176 Federal Street, 5th Floor
Boston, MA 02110
Telephone: (617) 439-6730
Facsimile: (617) 951-3954
jroddy@baileyglasser.com

*Counsel for Plaintiffs, the Plan,*
*and the Settlement Class*